People of the State of Illinois, Plaintiff-Appellee,
v. John J. Keane, Defendant-Appellant.

Gen. No. 53,966.

First District, Fourth Division.
July 22, 1970.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Ronald P. Katz and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James W. Reilley, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE DRUCKER delivered the opinion of the court.

Defendant was indicted for the offenses of deviate sexual assault (Ill Rev Stats 1967, c 38, § 11–3) and indecent liberties with a child (Ill Rev Stats 1967, c 38, § 11–4). A jury found defendant guilty of indecent liberties with a child and not guilty of deviate sexual assault. Judgment was entered and defendant was sentenced to a term of fifteen to twenty years. Defendant raises three points on appeal: (1) his pretrial motion to suppress identification testimony should have been sustained; (2) he was not proven guilty of the crime of indecent liberties beyond a reasonable doubt; and (3) prejudicial arguments of the prosecutor denied him a fair trial.

Testimony of James Van Vechten, called by the State:

He lives at 5501 South Cornell. He is a graduate student and research assistant in theoretical solid state physics at the James Frank Institute, University of Chicago. On November 14, 1966, at approximately 4:15 p. m., he went to take some trash out to the garbage cans located on the fire escape of his building. When he opened the door, he saw a man standing behind four window screens. In court, he pointed to defendant as this man.

On the date of the occurrence defendant had on a green, loose shirt, like a "Pendleton," with a white shirt

under it. Because of the screens he could not see below the middle ribs of defendant. He did not see the trousers. There was light coming through the glass window from the fire escape door and there was a light bulb overhead which was on.

When he first saw the defendant, defendant had his back to the wall and was fumbling with something with his hands which were below the screens. When he approached, defendant exited out the fire escape door. He looked down behind the screens and saw complainant lying on a coat and some other clothing. She was completely naked. He asked her if she was all right and she opened her eyes and said, "Someone has been doing something to me."

He called his wife and she took care of the girl and called the police. He ran out onto the fire escape but could not see the man. He saw a boy named Des Jardians and asked him which way the man had gone. The boy told him the man had gone north down the alley on 55th Street.

When he returned to the hallway he picked up the coat complainant had been lying on. Inside the flap pocket of the coat were some keys. He gave the coat and the keys to the two police officers who responded to his wife's call. He then identified a coat shown to him by the prosecutor as being similar to the one that he had found. He also identified two keys as the ones he found in the right flap pocket of the coat.

The afternoon of December 8, 1966, two police officers came to his home and asked him to view some photographs. He picked out the photograph of defendant. During the evening hours of the same day he viewed a lineup. When the men in the lineup turned around, he recognized the defendant but he was not certain. "I didn't want to say I was certain until I was. The man was standing quite erect, Mr. Keane. And the man I had

386

observed was in a slouched position with his back against the wall and his hands down below the window screens. So, I couldn't see what he was doing." He viewed the lineup for a total of four minutes. He became absolutely positive in his identification of defendant as the assailant approximately two and one-half minutes after the lineup began.

In the hallway at the time of the offense he saw a three-quarter view of defendant's face. He saw the right side of his face, not the left side. He did not notice a scar on defendant's face, since it is located on the left side of his face.

On cross-examination, he testified that he was about eighteen feet away when he first saw defendant in the hall and as he approached him he was about eight feet from him. When he went to the police station for the lineup, he was told that they had a suspect.

Testimony of James DesJardians, called by the State:

He lives at 5512 Hyde Park Boulevard. He is eleven years old and is in the sixth grade at the Bret Harte School. He knows the difference between the truth and a lie. He had talked with an Assistant State's Attorney before the trial. He was told to tell the truth.

On November 14, 1966, at approximately 4:15 p. m., he was in the alley behind 5501 South Cornell waiting for his mother to come home from the store. He saw a man run down the fire escape stairs out to the north of the alley. The man was wearing a green shirt, like a turtleneck, and dark pants. He thought he could point out this man in court. He indicated who this man was by placing his hand on defendant's shoulder.

After he saw the man run down the alley another man (James Van Vechten) came up to him and asked if he had just seen a man run down the fire escape. He stated, "Yes, I just saw a man." He did not pay much attention to the man as he ran by.

■■■■■■■■■

Testimony of complainant, called by the State:

She was born in 1960 and is now seven years old. She attends a private school and is in the second grade. She lives at 5511 South Cornell in an apartment building with her mother and sister. She understands the difference between the truth and a lie.

On November 14, 1966, she was walking home from school when a man asked her if she would like to cross the street. She said yes. The man held her hand as they crossed the street. Once across the street the man took her inside a building and took off his coat and put it on the floor. He told her to take off her clothes which she did. The man asked her to suck his penis, and he put his penis in her vagina. The man then ran out the door. She understands the meaning of the words penis and vagina.

She remembered the police coming over to her house but she did not remember seeing any photographs. She was shown a black topcoat which she said looked similar to the one the man took off and put on the floor.

At trial she could not identify anyone in the courtroom as her assailant.

Testimony of Dr. Gerald Sigman, called by the State:

There was a stipulation as to his qualifications. On November 14, 1966, he examined the complainant's genital area. There was an abrasion at the area of the fourchet (posterior area of the vagina between the vagina and the rectum). The hymenal ring appeared intact. No sperm was visualized.

Testimony of James McGreal, called by the State:

He has been a police officer for the City of Chicago for almost nine years. In his investigation he found that defendant resided at 7920 South Honore and arrested him on December 8, 1966. The two keys found inside the coat recovered by James Van Vechten were taken by him to defendant's residence. One key fit defend-

388

ant's vestibule door. He did not test the other key since somebody was home and he did not want to bother them.

Other Evidence

There was a stipulation that People's Exhibit Number Three for Identification was a photostatic copy of the original record of a sales receipt for a John J. Keane of 7920 South Honore; that the receipt showed that on November 4, 1966, defendant bought a topcoat at Richman Brothers located at 114 South State Street and that an examination of the coat would reveal that it was a black topcoat with a Richman Brothers label inside.

There was a further stipulation that the coat referred to in evidence was the same coat that was found on the floor by James Van Vechten and that the keys found inside the coat were the same ones referred to by the State's witnesses.

The defendant did not testify at trial. However, his mother testified that she was familiar with her son's wardrobe. He only had a few shirts. She never saw him wear a green shirt. With reference to the topcoat introduced into evidence he had "something that color, something like that."

Opinion

Defendant contends that his motion to suppress identification testimony should have been granted. He argues that the lineup in which he participated was unnecessarily suggestive and prejudicial.

On motion to suppress, Officers McGreal and Mannion testified that after Mr. Van Vechten and the complainant looked through a series of photographs and identified the photograph of defendant as the assailant they found the defendant and placed him under arrest. Several hours after the photographic identification, Mr. Van Vechten, James DesJardians and his father, and the complainant and her mother were asked to come to the

police station to view a lineup. The lineup, conducted by Officer McGreal, consisted of six male whites of various age groups. Each man was dressed in civilian clothes. The men stood approximately ten to fifteen feet away from the witnesses and each did a left face, right face, and about-face. Officer McGreal also testified that during the lineup defendant was wearing a blue waist-length jacket. He could not recall if any of the other men had on a jacket. The other participants in the lineup were a bit taller than defendant but they were all of slender build. Mr. Van Vechten and complainant identified defendant as the assailant. Des Jardians did not identify defendant.

Complainant's mother testified that she was not sure if defendant was the shortest man in the lineup.

Mr. Van Vechten testified that prior to the lineup he did not see in the police station any of the individuals who appeared in the lineup. The shortest man in the lineup he was later told was a policeman. This man was "somewhat" shorter than the defendant. Each of the men was shabbily dressed. When the men were brought into the lineup they were about ten feet away. He immediately recognized one of the men as the assailant but he "wasn't entirely certain. I didn't want to say I was certain until I was." When asked: "You say you weren't entirely certain," he answered: "At first." He further stated that he saw complainant point out the defendant.

From the evidence adduced at the hearing on the motion to suppress, we believe the trial court properly denied defendant's motion. While defendant may have been the only man wearing a blue jacket, this fact does not make the lineup so suggestive or prejudicial as to fatally taint the identification. People v. Woods, 114 Ill App2d 348, 252 NE2d 717, and People v. Wicks and Hayes, 115 Ill App2d 19, 252 NE2d 698. Furthermore, the lineup consisted of men of various ages and slender builds, and even though defendant may have

been the shortest man in the lineup (Mr. Van Vechten testified that he was not) the small height differential discrepancy referred to by defendant was insignificant.

Defendant next contends that he was not proven guilty beyond a reasonable doubt. He argues that the identification testimony of the complainant and Van Vechten failed to establish that he was the assailant. At trial complainant, age six, was qualified to testify. On two separate occasions the prosecutor asked her to look around the courtroom and see if she could identify her assailant. She failed to identify defendant. However, Mr. Van Vechten testified that he identified defendant from a series of photographs, at a lineup and again in court. When he viewed the lineup he told two people that he was not certain in his identification. However, he then explained that his uncertainty was based upon the fact that in the lineup defendant was standing erect and when he first observed defendant during the commission of the crime, he was in a slouched position with his back against the wall. While he recognized defendant he did not want to say he was certain until he was positive. After two and one-half minutes he was absolutely positive in his identification.

Furthermore, when Mr. Van Vechten first saw the defendant in the hallway, he was as close as eight feet to him. There was light coming through the glass window from the fire escape door and there was a lighted bulb overhead. He saw a right three-quarter view of defendant's face, but he did not notice a scar on defendant's face since it was located on the left side of the face. Mr. Van Vechten was subjected to rigorous cross-examination, yet his identification of defendant remained positive at all times.

In People v. Fortson, 110 Ill App2d 206, 212, 249 NE2d 260, this court said:

The adequacy of the identification raises a question of the credibility of the witnesses which is a

391

matter for the determination of the jury, sitting as triers of fact with the superior opportunity not only to hear the testimony of the witnesses but to observe their demeanor while on the witness stand. People v. Jackson, 28 Ill2d 566, 192 NE2d 873 (1963) ; People v. Evans, 25 Ill2d 194, 184 NE2d 836 (1962).

See also People v. Tribbett, 41 Ill2d 267, 242 NE2d 249.

We also point out that there was strong corroborating evidence of defendant's guilt. The black topcoat and keys found by Mr.. Van Vechten at the scene of the crime were introduced into evidence and both complainant and Van Vechten testified that the coat looked similar to the one the assailant had worn and left behind. Moreover, it was stipulated that defendant had recently purchased a black topcoat from Richman Brothers; that the coat in evidence was a black topcoat with a Richman Brothers label inside; and that one of the keys found inside the flap pocket of the coat fit defendant's vestibule door.

██ ██ It is within the province of a jury to determine the guilt or innocence of a defendant and its finding of guilty will be disturbed only where the evidence is so unsatisfactory as to leave a reasonable doubt as to the defendant's guilt. People v. Hampton, 44 Ill 2d 41, 253 NE2d 385, and cases there cited. In the instant case the evidence demonstrates that defendant was proven guilty beyond a reasonable doubt.

██ Defendant also claims that the prosecution failed to prove beyond a reasonable doubt the material elements of the crime of indecent liberties with a child.*

---

\* Indecent Liberties wth a Child.) (a) Any person of the age of 17 years and upwards who performs or submits to any of the following acts with a child under the age of 16 commits indecent

The evidence showed that defendant was forty-one years old and that complainant was six years old at the time of the crime; that she was asked to suck defendant's penis and that he put his penis in her vagina. Complainant's testimony was corroborated by Dr. Sigman, who examined her genital area. From this evidence we believe that the elements of indecent liberties with a child were proven beyond a reasonable doubt.

■ Defendant also argues that the prejudicial closing argument of the prosecutor denied him a fair trial. Defendant claims that the prosecutor engaged in personalizing the evidence when he made several comments concerning the scar on the left side of defendant's face. However, the prosecutor based these remarks upon Mr. Van Vechten's testimony, and we find that these comments did not prejudice the defendant.

■ Defendant also refers to a remark of the prosecutor dealing with the certainty of identification needed for an indictment. The prosecutor was emphasizing the manner in which Mr. Van Vechten positively identified the defendant during the police station lineup and this remark was not substantially prejudicial to the defendant.

■ Defendant further argues that it was prejudicial for the prosecutor to threaten and intimidate the jury prior to their deliberation. The trial court ruled that the prosecutor was not threatening the jury. We believe the prosecutor based his remarks on the evidence and find nothing improper in the challenged statements.

■ Several of the other remarks referred to by defendant were not objected to during the trial. There-

liberties with a child: . . . (3) Any lewd fondling or touching of either the child or the person done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child or the person or both. (Ill Rev Stats 1967, c 38, § 11–4.)

fore, the alleged errors, if any, were waived. People v. Hampton, supra.

The judgment is affirmed.

Affirmed.

ENGLISH and LEIGHTON, JJ., concur.