THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CLARENCE MORRIS, Defendant-Appellant.

(No. 54331;

First District—December 7, 1970.

444

Leonard Karlin, of Chicago, for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Elmer C. Kissane and Michael Scott Cisney, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE ADESKO delivered the opinion of the court:

Defendant Clarence Morris was convicted of aggravated battery and attempt with intent to commit robbery following a jury trial and was sentenced on both counts to two to five years in the State penitentiary, sentences to run concurrently. Defendant appeals his conviction on the grounds that (1) the in-court identification of the defendant was tainted by an improper line-up identification; (2) the search without a warrant that produced a weapon was too remote in time and place from defendant's arrest; and (3) the State failed to present an accurate Bill of Particulars within sufficient time to allow the preparation of a defense.

The evidence in this case indicates that on February 2, 1968, Mr. Frank Cooper left a wake at 8:35 p.m., in the City of Chicago and drove to 79th and Drexel where he parked his car. Because the snow was deep on the sidewalk he chose to walk down the middle of the street. After a few steps he heard someone behind him say, "Hold it, don't turn around; don't take your hands out of your pockets." Mr. Cooper testified that he did turn around and saw the defendant six to eight feet away crouched down at the rear end of a car. The illumination, according to the witness, was "light as day", since the street lighting was intensified by snow on the ground. As he turned around, Cooper testified that the defendant shot at him four times, hitting him once in the shoulder.

Mr. Cooper described his assailant as approximately 17 years old, better than 5 feet tall, wearing a cap, and having a dark complexion, a sloped face, and a smirk on his face that he (Cooper) would never forget. Frank Cooper testified that he also saw the gun which the defendant was holding and described it as being dark and of a small caliber.

Seconds after the shooting, Mr. Cooper followed his assailant toward a gangway, heard someone else with him, but gave up the chase and went to a drugstore to call the police. The police arrived and twenty minutes later brought in a youth for Mr. Cooper to identify at the drugstore. Mr. Cooper said the youth was not his assailant.

On March 24, 1968, the defendant Clarence Morris and a friend were apprehended by two police officers while they were standing on the corner of 68th and Stony Island. The officers suspected them of being curfew violators. Officer Jasagielnik testified that as he approached the defendant by car, the defendant ran down the street, put something behind a parked car, and returned to the corner. The officer went to the car with a flashlight and found a .32 caliber hand gun behind one of the tires. He put the gun in his belt and returned to the corner whereupon the defendant said, "that ain't my gun". Officer Jasagielnik then arrested the defendant and his friend.

On March 26, 1968, the defendant was arrested again and his home

searched pursuant to a search warrant. Nothing was found. On the same day defendant was placed in a police line-up with two adults. One of the men was a police officer who had a mustache; the other man had a round face. Both men, like the defendant, were Negroes. Frank Cooper identified the defendant as his assailant, stating "that number three man I never will forget him."

Defendant contends on appeal that the line-up used by the police to obtain an identification of the defendant was so unnecessarily suggestive that the subsequent in-court identification of the defendant was prejudicial and violative of due process. Defendant relies exclusively on *United States v. Wade*, 388 U.S. 218, *Gilbert v. California*, 388 U.S. 263 and *Stovall v. Denno*, 388 U.S. 298. Two of these three landmark cases decided by the U.S. Supreme Court, *United States v. Wade* and *Gilbert v. California*, dealt with the abuses of the police line-up as a means of pre-trial identification, and the consequences thereof. *Wade* and *Gilbert* specifically held that the in-court identification by a witness to whom the accused was exhibited before trial in the absence of counsel must be excluded unless it can be established that such evidence had an independent origin or that error in its admission was harmless. (*United States v. Wade*, 388 U.S. 218, 219, *Gilbert v. California*, 388 U.S. 263, 264.) The holding in these cases applies to the case before us since the pre-trial line-up occurred after June 12, 1967, the date of the *Wade* and *Gilbert* decisions.

The Supreme Court and Appellate Court of Illinois have applied the rule enunciated in *Wade, Gilbert*, and *Stovall v. Denno*, in the following cases:

In *People v. Nelson*, 40 Ill.2d 146, 238 N.E.2d 378 (1968), the Supreme Court of Illinois, relying on *Stovall v. Denno, supra*, affirmed the conviction of a narcotics pusher. In that case the court found that the defendant stood out at a line-up not because of any suggestive conduct by the police, but because of his own attempt to conceal his face. The court also found that the in-court identification of the defendant was independent of the line-up since the witnesses had known the defendant as a customer up to five months before the sale in question.

In *People v. Blumenshine*, 42 Ill.2d 508, 250 N.E.2d 152 (1969), four victims of a robbery in a laundromat first viewed the defendant alone in a room in a police station, then viewed the defendant with a suspected accomplice in the same room. The Illinois Supreme Court found the viewing to be a suggestive confrontation and consequently vacated judgment, remanding to the trial court to afford the State an opportunity to prove that the four witnesses' identification of the defendant at trial had an origin independent of the improper confrontation.

In *People v. McMath*, 104 Ill.App.2d 302, 244 N.E.2d 330 (1968), the Illinois Appellate Court held that a pre-trial confrontation between the victim of a robbery and the accused first at a gas station shortly after the robbery and later at a police station where the accused was the lone suspect was unfairly suggestive. Yet, the court also held that the victim's observation of the defendant at the time of the robbery disclosed a sufficiently independent source to stand as the basis for the court room identification. The sufficiently independent source consisted of the victim's observation of his assailant's height, build, and dress (a dark zipper jacket and gray hat) even though the assailant wore a stocking cap over his face at the time of the robbery.

■■ It appears from these cases that in an attack by a defendant on the admissibility of an in-court identification, it must be shown, first, that the pre-trial identification confrontation was unnecessarily suggestive and conducive to mistaken identification and second, that the State did not prove by clear and convincing evidence that the subsequent in-court identification had an independent origin arising from the uninfluenced observation of the defendant.

● 2 In the instant case, we believe the facts and circumstances of the pre-trial line-up were prejudicial and suggestive. The 18 year old defendant was placed in a line-up with two adults physically dissimilar to him. The police officer who conducted the line-up claimed that after the defendant was informed of his right to have an attorney present at the line-up, he stated he did not want an attorney. An attorney in the station spoke to the defendant before the line-up but was not present at the confrontation itself. We believe the trial court acted properly in suppressing the line-up identification of the defendant.

■■ However, we also believe that the State met its burden by clear and convincing proof that the subsequent in-court identification of the defendant Clarence Morris did have an independent origin arising out of an uninfluenced observation of the defendant. The identifying witness, Frank Cooper, had an adequate opportunity to observe the defendant at the time of the crime. Cooper stood six to eight feet away from his assailant; the illumination was bright; and there were no obstructions between the victim and his assailant. It is true that as Cooper turned around, a shot hit him in the shoulder, yet, Cooper's description of his assailant's face as well as his clothing was detailed. Furthermore, we believe Frank Cooper's identification of the youth brought by the police to the drugstore almost immediately after the incident as not being his assailant is particularly significant. The United States Supreme Court ruled in *Wade* that impediments to an objective observation are increased when the witness is the victim. (*U.S. v. Wade*, 388 U.S. 218, 230.) A

victim's understandable outrage may excite vengeful or spiteful motives and cause him to lash out at the first available opportunity. Frank Cooper's rejection of the youth seized by the police after the incident as his assailant mitigates that particular hazard in this case. For these reasons we hold that the trial court did not err in finding that the in-court identification of the defendant had an origin independent of the line-up.

■■ Defendant's second contention is that the trial court improperly denied defendant's motion to suppress evidence of a gun. The gun was found by a police officer behind a parked car over a month and a half after the alleged crime. Officer Jasagielnik testified that as he approached the defendant on a street corner at 4 o'clock in the morning, the defendant ran down the street and put something behind the parked car. The officer went to the spot and found the gun in question. Immediately thereafter he arrested the defendant. Two days later the defendant was arrested again. Defendant contends that this action amounts to a search without a warrant that is remote both in time and place from defendant's arrest. We disagree. Since possession of a concealed firearm constitutes the offense of unlawful use of weapons, the officer correctly searched for it without a warrant. We do not require of the police that they close their eyes until they can secure a search warrant where to do so would guarantee that the fruits of a crime would disappear. Ill. Rev. Stat, ch. 38, par. 108—1 (c) and (d) allow reasonable searches without a warrant for the purpose of discovering the fruits of a crime or discovering any instruments, articles or things which may have been used in the commission of an offense when a lawful arrest is effected.

■■■ Defendant's third contention is that the State failed to present an accurate Bill of Particulars within sufficient time to allow the preparation of a defense consequently denying to defendant the right to a fair trial and due process of law. On June 27, 1968, in response to defendant's motion, the trial court ordered the State to submit a Bill of Particulars within one week. The order was not complied with until July 8, 1968. The State claims a stenographic delay was responsible. Defense counsel accepted photostatic copies of the handwritten Bill of Particulars on July 8, 1968. The defendant answered ready for trial on July 8, 1968, even though he could have asked for a continuance. From July 8 to July 11, the trial court was occupied with motions to suppress. The trial itself began July 11. In reviewing defendant's contention, we find that the defendant failed to specify instances of prejudice and surprise that would deny him the right to a fair trial. (*People v. Bond,* 99 Ill.App.2d 45, 52, 241 N.E.2d 218 (1968).) Furthermore, defendant waived formal arraignment, entered a plea of not guilty, and according to the common law record, received a list of the names of the witnesses. If the defendant

449

does not demand a list of witnesses at the time he waives formal arraignment, he waives his statutory right to such a list. (*Kelly v. People,* 132 Ill. 363 (1890).) We hold that with regard to the matter of the Bill of Particulars, defendant was not deprived of due process and was not denied the right to a fair trial.

For the foregoing reasons the judgment of the Circuit Court of Cook County is affirmed.

Judgment affirmed.

BURMAN, P. J., and MURPHY, J., concur.