THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* STEVEN GARCIA, Defendant-Appellant.

(No. 72-40;

Second District—October 20, 1972.

Matthew J. Moran, of Defender Project, of Chicago, for appellant.

William V. Hopf, State's Attorney, of Wheaton, (Malcolm F. Smith, Assistant State's Attorney, of counsel,) for the People.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

Defendant was convicted of burglary in a jury trial and sentenced to 2-5 years. Appealing, he claims that he was not proved guilty beyond a reasonable doubt; that the identification procedures were unduly suggestive and otherwise impermissible; and that evidentiary errors denied him a fair trial.

Joseph J. Gaffney, a professional photographer, testified that on May 9th, 1969, about 8:50 P.M. he returned to his home in Elmhurst. Noticing that the bottom pane of glass in the rear door was broken, and that a

second door appeared to be kicked open, he went to a neighbor's home to phone the police. Upon knocking, he saw a person come down the embankment of his house and walk across the driveway. While he could not see the man's face, he could see what he termed an "excellent silhouette" due to a mercury vapor light forming backlighting. He yelled for the man to stop and chased him unsuccessfully. He then called the police and told them the suspect was running west down Elm Park Avenue. He described the man as a Caucasian male, approximately 5'9" to 6', but possibly 6'1" to 6'2", between 19 and 22 years of age, of slender build, wearing a sky blue windbreaker jacket with a Nehru collar and dark pants with a rag hanging from the pocket, having hair peaked in front and chopped in a shelf, and with a large distinctive nose. He also particularly noted the man's jawline.

Officer Martin of the Elmhurst Police Department testified that about 9:00 P.M. he observed an individual running north along the west side of York High School, about $\frac{3}{10}$ths of a mile west of the Gaffney residence. He followed on foot and found defendant in a courtyard crouching in the bushes surrounding the school. At the time, defendant was wearing dark pants and a white, short-sleeved T-shirt, although the weather was 45 or 50 degrees. Defendant's hair was cut straight across the back in a box cut. When asked what he was doing there, he said he had been in a fight and was hiding from his assailants. He had no bruise marks however.

Defendant was arrested and taken to the Gaffney residence. After looking directly at him from a distance of 6 feet, through a screen or storm door, and from about 3 feet above him in height, Gaffney said he wasn't the man.

Defendant was then taken to the Elmhurst Police Station where officers testified that after being informed of his rights a number of times and after a lengthy conversation about this and other burglaries, defendant admitted the burglary. He stated, according to the officers, that when he heard a car pull into the driveway he panicked, exited from the front door thinking it was the rear door, and wound up at the high school, which he thought was Elmhurst College where his car was parked (the parking lot of the college is directly behind the Gaffney residence). The officers stated that defendant declined to make a written confession and that no one was taking down the conversation.

Later that evening Gaffney went to the police station. A number of men were brought into an adjoining room one at a time, and Gaffney viewed them through a two-way mirror. The men wore jail robes, and were presented in a backlighting situation which Gaffney described as

being close to the same as that in which he viewed the burglar. He positively identified defendant as the man whose silhouette he saw.

On the same evening, defendant's borrowed car was found in the college parking lot where he said it was located, and a blue jacket with a Nehru collar was found in the bushes on the north side of York High School. Some two weeks later, gloves, containing jewelry taken from the Gaffney house, were found in the same area of the bushes. The jacket, gloves and jewelry were admitted into evidence over defendant's objection that the items were not connected with him.

In the course of the trial, Gaffney identified defendant as the man he had selected at the police station and said he was still positive of his identification. He attributed his failure to identify defendant at his home to the fact that he then viewed him directly in normal lighting, while at the station he saw him under the same conditions as he had seen him in the driveway.

Defendant testified on his own behalf that he had a near collision with a vehicle on an expressway while driving to Elmhurst College, that when he left his car in the parking lot he was assaulted by a man who was in the car, that he ran from the man and his two friends, that he hid in the bushes at York High School where he was arrested, and that he wasn't wearing a blue jacket. He said that he did not tell anyone that he had burglarized the house.

Defendant first argues that the identification of his silhouette in the police line-up was made under influences so suggestive that he was deprived of due process; and that the in-court identification was not independently formed.

■■ Relying principally on *Stovall v. Denno* (1967), 388 U.S. 293, 18 L.Ed.2d 1199; and *People v. Blumenshine* (1969), 42 Ill.2d 508, defendant initially urges that a "silhouette" identification with no opportunity to see other details normally relied on for meaningful identification, is inherently inadequate to serve as a basis for future identification. We recognize the dangers presented by identification under such conditions, and agree that this type of identification should be received with great caution. We nevertheless conclude that the procedure is not so conducive to mistaken identification as to render the testimony inadmissible. The weight is a question for the jury.

■■■ Defendant further contends that the procedure was unnecessarily suggestive because Gaffney admittedly had knowledge that defendant was in custody and had a previous burglary conviction at the time of the police station identification. However, there is no evidence in the record that at the time of identification, Gaffney knew that the man he identified

was the defendant. Defendant has not satisfied his burden of establishing an improper identification. See *People v. Tunstall* (1959), 17 Ill.2d 160, 163-164; *People v. Taylor* (1970), 123 Ill.App.2d 430, 436.

Defendant urges that even if identification based on a silhouette view could be considered admissible there was no connection shown between the silhouette identified by Gaffney and the defendant. It is true that Gaffney made it evident in his trial testimony that he could positively identify defendant in the pre-trial confrontation only in proper backlighting conditions, and that at the trial he did not view defendant under backlighting. But Gaffney was able, in court, to identify defendant positively. He testified that, although defendant's hair style was not the same, his nose had not changed. And it is further to be noted that Gaffney furnished the police with a number of identifying details in his first description in which he stated that the man he saw under the street lighting had a distinctive nose.

■■ The fact that Gaffney was unable to identify defendant when he first viewed him after the burglary was a circumstance which, together with his explanation for his failure, affected the weight of his testimony but not its admissibility.

■■ Defendant has also complained that the court erred in denying his motion to suppress the identification testimony without conducting a hearing. The motion was predicated on *United States v. Wade* (1967), 388 U.S. 218, 18 L.Ed.2d 1149, on the stated ground that defendant had the right to counsel at the identification proceedings. However, in *Kirby v. Illinois* (1972), 32 L.Ed.2d 411, *Wade* has been held applicable only to post-indictment identification procedures. It therefore was not error to deny defendant's motion without a hearing.

A further consideration in this record is the fact that defendant's guilt is supported by other strong circumstances, unlike *Stovall v. Denno*, 388 U.S. 293, *supra*, and other cases cited by defendant in which the challenged identification was the only substantial proof.

■■ The totality of the proof shows guilt beyond a reasonable doubt. Defendant confessed to the crime. He was found hiding in bushes some 3 blocks from the burglarized premises approximately 5 minutes after the police were notified. A blue jacket similar to one worn by the person who was seen to run from the burglarized premises was later found in the bushes near the spot where defendant was hiding. When found, defendant was not attired in the jacket but was wearing pants and a T-shirt although the temperature was 45 or 50 degrees. His car was found in a parking lot directly behind the burglarized premises. Several weeks after the burglary, items taken in it were found in the vicinity of de-

fendant's hiding place. The jury was not required to believe defendant's denials under these circumstances.

■■ Defendant's argument that it was error to admit the jacket, gloves, and jewelry taken in the burglary because they were not connected with the defendant, is not persuasive. There is a sufficient circumstantial connection between the evidence and the defendant, which distinguishes *People v. Miller* (1968), 40 Ill.2d 154, 159 cited by defendant. See *People v. Bryan* (1963), 27 Ill.2d 191, 194-5; *People v. Johnson* (1967), 88 Ill.App.2d 265, 281.

Defendant contends that the court erred in refusing to admit a crime laboratory report concerning the jewelry. Defendant argues that the report would have shown that defendant's fingerprints were not found on the jewelry. However, there is nothing in the record to support this argument since the report was not tendered as an offer of proof.

Defendant also argues that the court erred in refusing evidence of a previous *nolle prosse* entered on the State's motion. Defendant contends that this would tend to show that he did not, in fact, confess to the crime. He says it also tends to show that there was a reasonable doubt of defendant's guilt, since the police had already conducted the line-up identification and had collected all material items which were offered into evidence at the trial and yet the State's Attorney advised the court that there was no evidence against the defendant.

■■ Defendant misapprehends the effect of a *nolle prosse*. When it is entered before jeopardy is attached it does not operate as an acquittal so as to prevent a subsequent prosecution for the same offense. It leaves the matter in the same condition as before the prosecution. *People v. Watson* (1946), 394 Ill. 177, 179.

■■ Thus the evidence of the *nolle prosse* was not probative evidence in defendant's trial on the re-indictment. It was therefore properly refused since it would not have furnished proof to support defendant's trial testimony that he did not confess. The jury could weigh his denial against the officers' testimony that he did confess and resolve the issue as it did. This determination was in no way against the manifest weight of the evidence.

Viewing the evidence in its entirety we have no reasonable doubt of defendant's guilt. The judgment below is therefore affirmed.

Judgment affirmed.

ABRAHAMSON and T. MORAN, JJ., concur.