The People of the State of Illinois, Plaintiff-Appellee, *v.* Ollie Hammonds, Defendant-Appellant.

(No. 71-143;

Fifth District—June 8, 1973.

Kenneth L. Jones, of Defender Project, of Mt. Vernon, (Edith L. James, of counsel,) for appellant.

Nicholas G. Byron, State's Attorney, of Edwardsville, for the People.

Mr. PRESIDING JUSTICE EBERSPACHER delivered the opinion of the court:

The defendant, Ollie Hammonds, represented by appointed counsel, pleaded not guilty to the charge of attempted murder and attempted armed robbery as charged by indictment in the Circuit Court of Madison County. The trial was held to a jury and resulted in a finding of guilty. The judgment of conviction was entered by the court on October 29, 1970. After a hearing in aggravation and mitigation, the defendant's application for probation was denied and he was sentenced by the court to concurrent terms of seventeen to twenty years for attempted murder and three to six years for attempted armed robbery. The defendant has brought this appeal from the judgment of the court.

The facts that give rise to this matter are as follows:

At about 2:30 A.M. on April 5, 1970, two black men entered the Site Service Station, 2640 East Broadway, Alton, Illinois. They asked the lone attendant, Robert Kincade, for some cigarettes. Kincade turned around, got the cigarettes and put them on the counter. He then stooped to get matches. When he staightened up, he was looking into the barrel of a pistol. The pistol was being held by the taller of the two men. The taller man said "This is a stick-up" then "chuckled" and shot Kincade. Kincade fell and the men left the premises.

At 2:49 A.M. of the same night, Officer James Casper of the Alton Police arrived at the station. He found Kincade lying on the floor, conscious, but in much pain. Officer Casper attempted to interview Kincade before the ambulance arrived and was told by Kincade what is above described and also that the man holding the gun was approximately six feet tall. Kincade was then taken to the hospital where he remained some three weeks until April 27, 1970.

While in the hospital, Kincade was interviewed twice by Detective John Parker. During one interview, on April 10, Kincade stated that the gunman was a Negro male, six feet tall, slender and with a thin mustache. On April 21, Kincade stated the man was at least six feet tall, was neatly dressed and had clear features. Then again on April 30, during an interview in Kincade's home, Kincade stated that the man was a Negro in his early twenties, at least six feet tall, slender, with short hair and was wearing a very loud colored sweater. He could not describe the color of the sweater.

At about 9:00 in the morning of May 21, 1970, the defendant was arrested at his home on a charge of disorderly conduct. While the defendant was in the station, being booked on that charge, he was told that he was under arrest for investigation of attempted armed robbery and attempted murder. The arresting officer testified that the defendant

was advised of his rights. The defendant at this time signed an agreement to appear in the lineup and a waiver of counsel at the lineup. A lineup was conducted. It contained four persons. All were black males. The three men other than the defendant were respectively 39 years old and 5'9", 16 years old and 5'10", 55 years old and 6'2". The defendant was age 21 and 6'3" tall. Kincade picked the defendant out of the lineup. On May 22, 1970, the grand jury indicted the defendant for the crimes charged.

The defendant moved to suppress Kincade's lineup identification on the grounds that the lineup procedure was unduly prejudicial and suggestive. This motion was denied. At trial, the defendant objected to testimony by Kincade as to his participation in the lineup.

The State's case consisted not only of the testimony of Kincade but also arresting officers and the doctor who attended Kincade.

The defendant's chief witness was his mother, Mrs. Hosie Hammonds, who testified that on the night in question the defendant was at home asleep on the couch. She said that she was awake reading the Bible most of the night. The defendant's brothers, Ronald and John, corroborated their mother's testimony. They all recalled the night of April 4, 1970, because the day before the defendant had been released from jail where he had been held on a disorderly conduct charge.

A defense motion for a directed verdict was made at the close of the evidence and was denied. The jury found the defendant guilty on both charges.

■■ The defendant has brought this appeal and urges that the court erred in failing to suppress the lineup identification. The defendant contends that the lineup was unduly suggestive and prejudicial (*Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199.) The court must look to the facts of each case to determine whether the particular lineup is inherently unfair. (*People v. Lee*, 44 Ill.2d 161, 254 N.E.2d 469.) We must, therefore, look to the totality of the surrounding circumstances to determine if the lineup was so lacking in fairness to deprive the defendant of due process. (*Stovall v. Denno, supra.*) As we examine the record, we cannot find where the particular lineup in this case is so lacking. There is some discrepancy as to the age and size of the others in the lineup, but we cannot hold that this alone was of such magnitude as to deprive the defendant of due process. (See *People v. Keane*, 127 Ill.App.2d 383, 262 N.E.2d 364.) The burden is upon the defendant to show that the lineup was so lacking as to fall within the *Stovall* case dictates (*People v. Garcia*, 7 Ill.App.3d 742, 288 N.E.2d 637), and to the extent that suggestive procedures are established, they must be shown to have been "unnecessary" under the totality of the circum-

stances. (*Stovall v. Denno, People v. Lee.*) The manner of identification goes to the weight rather than the admissibility or competency of identification evidence. *People v. Tunstall,* 17 Ill.2d 160, 161 N.E.2d 300; *People v. Taylor,* 123 Ill.App.3d 430, 258 N.E.2d 823.

■■ The defendant further contends that the victim did not have sufficient opportunity to identify the perpetrator of the felony. The victim did see the defendant inside a lighted station and had at least two occasions to look directly at the defendant as well as down the barrel of the gun. The victim was basically consistent in his identification of the wrongdoer in the numerous interviews by the officers. There were minor differences in what he reported to the officers, but his reports to the officers have more than a thread of consistency. The case at hand does not fall within the bounds of *People v. Morris,* 131 Ill.App.2d 443, 266 N.E.2d 444, and other cases which require that an identification not be admissible evidence if the pretrial identification is unnecessarily suggestive and conducive to a mistaken identification. The trial court in the present case had the opportunity in a pre-trial hearing to determine the propriety of the lineup. "It is neither the duty nor the privilege of a reviewing court to substitute its judgment as to the credibility of witnesses for that of the trier of fact who heard the evidence presented and observed the demeanor of the witnesses." (*People v. Novotny,* 41 Ill.2d 401, 412, 244 N.E.2d 182, 188; see also *People v. Jones,* 6 Ill.App.3d 669, 286 N.E.2d 87.) The other cases cited by the defendant do not control the present case because they involve one man and not lineup identifications or other defects not present in this case.

■■ Because we do not hold that "the pre-trial identification confrontation was unnecessarily suggestive and conducive to mistake identification" (*People v. Morris, supra*), we need not determine whether or not the subsequent in-court identifications was proved by the State by clear and convincing evidence of an independent origin. *People v. Morris, supra; U.S. v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149; *Gilbert v. California,* 388 U.S. 263, 87 S.Ct. 1951, 182 L.Ed.2d 1178.

Did the trial court err in not directing a verdict at the conclusion of the evidence because the defendant had an uncontroverted alibi? This is the next question for this court.

■■ Once again, the defendant relies most heavily upon the complaining witness' identification or lack of same. It would serve little purpose to once again set forth the numerous cases that state that one eyewitness is sufficient to support a conviction. (*People v. Clarke,* 50 Ill.2d 104, 277 N.E.2d 866.) The *Clarke* case not only involved a single witness identification, but also an uncontroverted alibi by the defendant and was subsequently affirmed by the Supreme Court. The defendant in *Clarke,* which

also had identification difficulties interwoven in the problem, made the assertion "that he has not been proven guilty beyond a reasonable doubt because the identification testimony, when considered with the defendant's alibi, is sufficient to create a reasonable doubt as to the defendant's guilt". The Supreme Court, when confronted with this contention stated at page 109, "We disagree."

The Court in the *Clarke* case continued at page 110 that where the conviction rests on vague and doubtful identification "which does not produce an abiding conviction of guilt, it will be reversed, and that evidence of alibi cannot be disregarded where the sole and only evidence contradicting it rests upon the identity of the defendant."

We will, of course, reverse if we find reasonable doubt of the defendant's guilt appears in the record. (*People v. Peck*, 358 Ill. 642, 118 N.E. 466.) We have reviewed the cases cited by the defendant and do not feel that they are dispositive of the instant case.

■■ The identification we have found to be competent. Therefore, the evidence and its credibility is a matter for the jury's determination. We believe there is competent evidence to support the jury's conviction. *People v. Perry*, 5 Ill.App.3d 530, 283 N.E.2d 506.

■■ As the final issue on this appeal, the defendant states that the sentence of from 17 to 20 years for the attempted murder is excessive. The defendant, as a corollary to the contention that the sentence is excessive, also states that there is not sufficiency of proof of the crime of attempted murder but that the charge should have been aggravated assault. The charge of attempt to murder or attempted murder is composed of the elements of the attempt to kill coupled with the specific intent to commit murder. (*People v. Drink*, 85 Ill.App.2d 202, 229 N.E. 2d 409.) It is well settled law in this jurisdiction:

"* * * that intent is a state of mind, and, if not admitted, can be shown by surrounding circumstances, and intent to take a life may be inferred from the character of the assault, the use of a deadly weapon and other circumstances. (*People v. Shields*, 6 Ill.2d 200.) Also, 'Since every sane man is presumed to intend all the natural and probable consequences flowing from his own deliberate act, it follows that if one willfully does an act, the direct and natural tendency of which is to destroy another's life, the natural and irresistible conclusion, in the absence of qualifying facts, is that the destruction of such other person's life was intended.' (*People v. Coolidge*, 26 Ill.2d 533, 537." *People v. Koshiol*, 45 Ill.2d 573, 262 N.E.2d 446. *Cert. denied* 401 U.S. 978.

■■ The evidence is clear in the case at hand that the defendant "chuckled" and fired a large caliber handgun point blank at his victim.

Evidence submitted is of such nature that the jury could and did conclude that there was sufficient intent to support the charge.

We do not consider that *People v. Davis*, 6 Ill.App.3d 622, 286 N.E.2d 8, lends support to this defendant's contention, and under any circumstances that case is distinguishable on the facts.

■■ A sentence of 17 to 20 years leaves little discretion to parole authorities and may be discouraging to rehabilitative efforts and under our concept of indeterminate is not a proper one. Under the Uniform Code of Corrections attempt to commit murder is a Class 1 Felony punishable by a minimum of four years unless the court, having regard to the nature and circumstances of the offense and the history and the character of defendant sets a higher minimum term, Ill. Rev. Stat., ch. 38, § 1005—8—1, and the minimum may exceed one third of the maximum in Class 1 Felonies. Under the provisions of ch. 38, § 8—4(c)(3), an attempted armed robbery sentence shall not exceed the sentence for a Class 3 Felony, and in Class 3 Felonies the minimum cannot be greater than one third of the maximum imposed. (Ch. 38, § 1005—8—1 (c)(4).) We are of the opinion that in this case the trial court can best determine the proper sentences.

We therefore, affirm the conviction, but vacate the sentences and remand for sentencing under the Uniform Code of Corrections. Ill. Rev. Stat. ch. 38, § 1001—1—1 *et seq.*

Conviction affirmed, sentences vacated, remanded.

JONES and G. MORAN, JJ., concur.