**People of the State of Illinois, Plaintiff-Appellee, v. Michael L. Malone, Defendant-Appellant.**

Gen. No. 53,748.

First District, Fourth Division.

June 10, 1970.

John B. Cashion, of Chicago, for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Laurence J. Bolon, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE ENGLISH delivered the opinion of the court.

## OFFENSE CHARGED
Robbery. Ill Rev Stats 1967, c 38, § 18–1.

## JUDGMENT
After a jury trial in which defendant was found guilty, the court imposed a sentence of 2 to 4 years.

## ISSUES RAISED ON APPEAL
1. Defendant was not proven guilty beyond a reasonable doubt.

2. The trial court improperly refused to permit defense counsel to argue his interpretation of reasonable doubt.

3. The prosecutor's final argument was improper and denied defendant a fair trial.

4. The trial court, during the hearing in aggravation and mitigation, improperly considered defendant's prior convictions in Boy's Court.

## EVIDENCE
William Brown, for the State:

Around midnight on March 2, 1968, he walked from his residence at 317 South Throop Street to a restaurant at Madison Street and Ogden Avenue. He ate a bowl of soup there and left at approximately 12:45 a. m. on March 3. He then vomited, since he was still weak from a recent illness and confinement with tuberculosis. As he was walking home in the vicinity of Laflin and Adams, a "fellow" (identified as defendant) came from behind him and asked for a cigarette. He was reaching for his cigarettes when defendant asked if he had any money. He replied, "Yes, about $8." Thereupon, defendant told him to get up against the wall, which he did. Facing the wall, he was searched by defendant, who kept his right hand in his pocket. Defendant took $7 from the witness' wallet, together with $1 in loose change and various medicines and papers from his pockets. The wallet, medicine and papers were then thrown to the ground.

267

Defendant kept telling him to turn toward the wall and asked if he wanted to be shot. Defendant then turned and walked south on Laflin. The witness hailed a squad car parked nearby and two policemen got out. He told them what had happened and they grabbed defendant. He observed the officers as they searched defendant and found $8 on his person.

Steve Glynn, for the State:

He is a police officer, and on March 3, 1968, at approximately 1:00 a. m., was patrolling in a marked squad car with Officer Finstrom on Laflin between Monroe and Adams Streets. He observed two men standing against a wall just off the northeast corner of Laflin and Adams. "It appeared that one man (identified as defendant) was holding the other man against the wall." The witness then drove up behind the men at the curb and was getting out of the car when Mr. Brown shouted that defendant had robbed him. Defendant started to walk south on Laflin and threw a wallet into the air. Defendant was told to stop, but when he continued walking, the witness and his partner grabbed him by the arms. A search of defendant's person at the scene revealed $7 in bills and a dollar in change. Defendant was not carrying a weapon.

Dale Finstrom, for the State:

He is a police officer, and his testimony was substantially the same as that of Officer Glynn. However, he could not testify that defendant was "actually using any force as opposed to Mr. Brown."

Michael Malone, on his own behalf:

On the night in question, he was headed home, after leaving the 1340 Club on Madison Avenue, walking southward on Laflin toward the bus stop at Adams and Laflin. He noticed a police car parked on Laflin near the intersection of Monroe. He continued down the street and noticed a man leaning against the wall of a building at the northeast corner of Adams and Laflin. The man

was staggering, as if something was wrong, and mumbling, but defendant didn't understand what he was saying. He noticed a wallet, keys, papers and medicine "that was on the ground falling out." He asked if anything was wrong, but the man kept up the incoherent mumbling. The man began to fall, so defendant put his "hand around him and grabbed him to keep him from falling." When Brown was balanced, defendant started picking up the articles that were strewn on the ground.

The police then drove up and Brown told them he had been robbed. Defendant was frightened, and the objects fell from his hands. He did not walk away but went to the squad car when the police asked him to. He was frisked and taken to the station, where the police took $7 from him and gave it to Mr. Brown. He had $33 in his pants pocket when he was taken into custody. He denied threatening Mr. Brown or taking any of his money.

OPINION

■■■■■■ Defendant initially contends that he was not proven guilty beyond a reasonable doubt, as the evidence is wholly lacking in proof of the use of force. In order to prove robbery, the State must show a threat or use of such force as to overcome the power of the owner to retain his property. People v. Williams, 23 Ill2d 295, 485. The victim testified that defendant, a total stran- 178 NE2d 372; People v. Hampton, 44 Ill2d 41, 253 NE2d ger, approached him from behind and ordered him to face a wall. Defendant kept his right hand in his pocket during the entire incident. These circumstances obviously produced in the victim a reasonable fear which induced him to part with his property against his will. See People v. Carpenter, 71 Ill App2d 137, 217 NE2d 337. The testimony was sufficient to support defendant's conviction. While the officers' testimony furnished only partial corroboration of the victim's account, and it was

contradicted by the accused, a conviction will stand, nevertheless, if the testimony of a single witness is positive and credible, as it was in this case. People v. Davis, 103 Ill App2d 418, 424, 244 NE2d 381.

■ It is also urged that the trial court erred in refusing to permit defense counsel, during closing argument, to present to the jury his interpretation of "reasonable doubt." We believe that the court was correct. The IPI Committee, on the basis of innumerable cases through the years, recommends that no instruction be given defining "reasonable doubt" because it is a term which needs no elaboration, and to attempt to define it is futile. IPI, Criminal, § 2.05. If the trial court is to be so limited, it becomes evident why the court, in turn, must have discretion to deny counsel an opportunity to offer his own comments on the meaning of "reasonable doubt."

■ Defendant next contends that the prosecutor's final argument was prejudicial and denied him a fair trial. The prosecutor made reference to defense counsel's argument in which he had doubted that any person would commit a crime on a public street corner, as alleged in the instant case, where "anybody could see both of these men." The prosecutor then mentioned a prior occurrence in the courtroom, evidenced by a bullet-crack in the floor, where a spectator had shot at the judge. We believe that, under these circumstances, the prosecutor had been invited to reply, as he did, to the argument initiated by defense counsel. See People v. Hardaway, 108 Ill App2d 325, 330, 247 NE2d 626; People v. Edwards, 98 Ill App2d 128, 135, 240 NE2d 430. The nature of the prosecutor's comment was a fair response, and not such as would arouse passion or prejudice in the jury. Accordingly, we find that defendant was not thereby denied a fair trial.

■ Defendant's final contention is that, at the post-trial hearing in aggravation and mitigation, the court

improperly considered defendant's prior convictions in Boy's Court in determining the sentence. This argument is without merit, as it confuses Boy's Court with Juvenile Court. Defendant places reliance on In re Gault, 387 US 1, to support his theory that no evidence of prior convictions should be considered unless the proceedings resulting in the conviction and sentencing had been "clothed with the trappings of due process." Gault has no application in the instant case since it is concerned solely with the adjudicatory stage of a "juvenile proceeding." Boy's Court is simply a branch of the First Municipal District of the Circuit Court (Ill Rev Stats 1967, Const art VI, §§ 1 and 8), and its proceedings may result in routine misdemeanor convictions, whereas "juvenile proceedings" exist by authority of the Juvenile Court Act (Ill Rev Stats 1967, c 37, § 701–1, et seq.). We find no impropriety in the court's sentencing procedure in the instant case.

The judgment of the Circuit Court is affirmed.

Affirmed.

DRUCKER and LEIGHTON, JJ., concur.