THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
BENNIE JONES, Defendant-Appellant.

First District (1st Division)    No. 77-1107

Opinion filed March 26, 1979.

James J. Doherty, Public Defender, of Chicago (James L. Rhodes, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger and Paul C. Gridelli, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

After a jury trial, Bennie Jones (defendant) was convicted of rape, aggravated battery, attempt murder and taking indecent liberties with a child. The defendant was sentenced to concurrent terms of 50 to 100 years for each offense. Defendant appeals.

Defendant contends that the means utilized to effectuate his identification by the complaining witness were so unnecessarily suggestive and conducive to mistaken identification as to deny him due process of law; the State failed to sustain its burden of proving the defendant guilty beyond a reasonable doubt; pretrial publicity and prosecutorial misconduct deprived defendant of a fair trial; the instructions were improper and prejudiced the jury; the conviction for taking indecent liberties with a child, which arose from the same facts as the rape conviction, cannot stand; and the sentence was excessive.

On the afternoon of February 29, 1976, the complainant, then 13 years old, walked past a factory or warehouse building. She heard someone say "Come here" and she was grabbed around the arm and neck and pulled into the building. She "started to scream." She got a look at her

assailant when he locked the door. She identified this person in court as the defendant. The man was wearing a dark blue uniform with a patch on the arm. He had a light mustache and a short "afro" haircut.

She continued to scream. The defendant seized her by the hair and dragged her up a flight of stairs and into an office. Defendant then raped her. This office was well lighted. She looked at the defendant's face during this incident.

Defendant dragged the complainant through the brightly lighted warehouse. He sprayed her in the face with scotchguard fabric protector from an aerosol can. He then stuffed her into a locker into which he continued to spray the contents of the can. In a short time defendant returned to the screaming complainant. He had a steel pole in his hand. He dragged and pushed her into a boiler room. He struck her over the head with the metal pole. Defendant then produced a knife. He ordered the complainant to slash her wrist. When she refused, the defendant slashed her left wrist with the knife. Defendant left the boiler room for a short while. He locked the door behind him. He returned and slashed the complainant's throat twice with a knife. She cried and screamed. Defendant then proceeded to stab her several times in the chest, neck and back and also kicked her. Defendant attempted to tie her hands together with some dirty rags. Complainant testified that at this time she "slumped over and fell asleep."

Subsequently, defendant returned and shined a flashlight into the complainant's eyes. She testified that, "I tried to pretend as if I was dead." The defendant kicked and pushed her and then left the room. The complainant did not recall seeing the defendant again. She testified to several periods of unconsciousness interrupted by her attempts to leave the boiler room. She kept falling down and falling asleep. Finally, she made her way out of the boiler room. She was found the next morning by some men who had entered the building to move some machinery. They called the police.

The complainant was admitted to the intensive care unit of a local hospital. She could not speak because of her injuries. She communicated by writing on paper given to the police officers at the scene of the incident. At the hospital she nodded her head in response to questions asked by hospital employees. In this manner, she informed the officers that she had been raped, her assailant was black, tall and thin, and he wore a uniform and a badge.

On the next day, the police officers went to the hospital and received a verbal description of the assailant from the complainant who was then able to speak. She described her assailant as a young, black man who wore a uniform. Later that same day, the officers returned to the hospital with a lineup photograph. Although the complainant had been receiving

medication, both of the officers and the attending nurse testified that she was responsive and alert. The complainant had intravenous tubing in one arm and a heavy cast on the other. She was unable to lift either arm to point to the photograph. The attending nurse testified that she supported the complainant's arm while the complainant pointed to one of the men in the photograph. Without being told that a suspect had been arrested and without her attention having been directed to any part of the photograph, the complainant pointed to the defendant and stated that she was certain that he was her assailant. This occurrence was witnessed by the attending nurse and the two police officers, all of whom were present in the hospital room at the time of the identification.

Medical testimony showed that when the complainant was admitted to the hospital she had "big lacerations" in the front of her neck. There were also cuts on her windpipe, trachea, chest and back and on her left wrist. She was unable to speak but was responsive and alert. The vagina had bruises and a marked swelling.

The evidence shows that the police ascertained that the defendant was the security guard at the warehouse about the time that the complainant had been taken in. After a consentual examination of defendant's home, the police found his freshly washed uniform in a washing machine. Examination of defendant's shoes and of the complainant's clothes showed type A human blood. The complainant's blood is type A and that of defendant is type O. The police conducted a lineup. As indicated, a photograph reflecting this was shown to the complainant in the hospital.

The defendant, about 19 years old at the time of the occurrence, testified that he was a security guard at the factory or warehouse on the date in question from about noon to 8 p.m. He was wearing a blue uniform with a badge sewn on the jacket. He was admitted by a female guard he was to relieve. She left about one hour after he arrived. Other than himself he saw no man in the building who fit the description of the assailant supplied by the complainant. The door through which he entered the factory was locked. When he entered he "was the only one there." He did not hear a girl screaming. Defendant testified, "I didn't hear anything."

Defendant denied categorically that he had raped or mistreated the complainant. He testified that because of surgery on his legs, and resulting heavy scars, he is obliged to walk on the ball of his left foot. His employment application recited that he had no "serious handicap" or "physical disorder." The guard he had relieved testified that, "The person who replaced me did not have a limp."

Defendant's mother testified that she saw the defendant for 30 to 35 minutes on the night in question, February 29. She stated that there were

no stains on defendant's uniform. The State called a police officer who testified that he had interviewed defendant's mother at her home on April 4, 1977. She told him that she did not see the defendant from 12 o'clock noon February 29, 1976, until 7 a.m. March 1, 1976.

I.

The defendant first contends that the State failed to prove him guilty beyond a reasonable doubt. In so doing the defendant questions the validity of the identification made by the complainant. The Illinois Supreme Court has held that the burden of proving that a lineup procedure was unfair is upon the defendant. *People v. Brown* (1972), 52 Ill. 2d 94, 100, 285 N.E.2d 1, citing *People v. Blumenshine* (1969), 42 Ill. 2d 508, 511-12, 250 N.E.2d 152.

■■ Defendant urges that the fact that he was the only man in the lineup without shoes was highly suggestive. This court has rejected similar arguments. In *People v. Keane* (1970), 127 Ill. App. 2d 383, 390, 262 N.E.2d 364, the defendant was the only man in the lineup wearing a blue jacket. This court held that this fact alone did not make the lineup "so suggestive or prejudicial as to fatally taint the identification." See also *People v. Bates* (1973), 9 Ill. App. 3d 882, 892, 293 N.E.2d 358; and *People v. Spence* (1976), 43 Ill. App. 3d 1044, 1049-50, 357 N.E.2d 1245.

Defendant urges that the attending nurse and not the complainant identified the defendant from the lineup photograph. The complainant testified that the nurse provided support for her left arm which was weighed down by a cast while she (the complainant) identified the defendant by pointing to him in the lineup picture. This testimony was corroborated by the attending nurse. The defendant also contends that the police officers retained in their possession individual photographs of the defendant which were inherently prejudicial to him. The officers testified that while they were in possession of photographs, these photographs were not shown to anyone. The complainant testified that the only photograph which was shown was the lineup picture.

The defendant further urges that the complainant failed to testify to any abnormality attributable to the legs of her assailant. A presentation of the defendant's legs in the courtroom revealed that the defendant has significant scarring on both legs below the knees. This evidence has little weight as the complainant testified that she looked into her assailant's face during the assault. The complainant did not testify that she saw the legs of her assailant. Defendant also stresses that the complainant's description of the defendant was fatally defective because she did not state that her assailant walked with a limp. Defendant contends that he does have a limp. However, a fellow employee of the defendant, whom he relieved at the factory, testified that she had never noticed the defendant walked

with a limp. The record convinces us and we accordingly hold that the identification by the complainant was not so unnecessarily suggestive and conducive to irreparable misidentification as to deny the defendant due process of law.

■■ The Illinois Supreme Court has adopted the "totality of the circumstances" test established in *Stovall v. Denno* (1967), 388 U.S. 293, 18 L. Ed. 2d 1199, 87 S. Ct. 1967, to evaluate the admission of possibly suggestive out-of-court identifications. In accordance with that test the court has held in *People v. Manion* (1977), 67 Ill. 2d 564, 571, 367 N.E.2d 1313:

> "* * * evidence of an unnecessarily suggestive identification may nevertheless be admitted at trial if reliability of the identification, under the totality of circumstances, is shown."

In *Manion*, the court cited *Neil v. Biggers* (1972), 409 U.S. 188, 199, 34 L. Ed. 2d 401, 93 S. Ct. 375, and listed the factors to be considered in evaluating the reliability of identification procedures (*Manion*, 67 Ill. 2d 564, 571):

> "* * * 'the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.' "

See also *People v. McKinley* (1977), 69 Ill. 2d 145, 152, 370 N.E.2d 1040.

In the case before us the complainant testified that she had ample opportunity to view the defendant's face during the long course of her ordeal. She testified that the building was sufficiently lighted to allow her clearly to see the defendant's face. This has been corroborated by the police technicians who testified to the sufficiency of the light upon the premises which made the use of flashlights unnecessary. The complainant's testimony is further corroborated by the accuracy of the intial description of the defendant which she gave to the police soon after the incident, the certainty with which she identified the defendant from the lineup photograph, and the short time that elapsed between the incident and her identification of the defendant.

In *People v. Williams* (1975), 60 Ill. 2d 1, 11, 322 N.E.2d 819, the Illinois Supreme Court held that photographic identification testimony should have been admissible at trial regardless of suggestive procedure because:

> "* * * the identification testimony * * * was based on an origin sufficiently independent of the photographic identification. She had an opportunity to observe the tall robber for over seven minutes at distances of just a few feet. * * * The remainder of her observations occurred in the bedroom which was dimly but

adequately illuminated by lights in the adjoining bathroom and hallway."

We conclude that not only was the identification process not suggestive but the identification of the defendant had an adequate origin independent of the lineup photograph so as to render irrelevant any suggestibility in connection with the photograph.

The record before us contains other evidence of guilt in addition to the identification. Blood of the complainant's type, which was different from that of the defendant, was found on the defendant's shoes. Testimony by the treating physician confirmed that the complainant had been raped. Testimony by other security guards established that the defendant was on duty and alone at the time the incident occurred. Their testimony also established that the defendant left the warehouse before his replacement arrived. The police found defendant's uniform freshly laundered in a washing machine at his home. Defendant's mother testified that there had been no stains on the defendant's uniform when he returned from work on the day of the incident. However, her testimony was impeached on the basis of prior inconsistent statements to a police investigator. Finally, while the defendant denied assaulting the complainant, he testified he was the only one present in the factory or warehouse at the time in question, access to the premises could only be achieved by being let in, he himself matched the complainant's description and he knew of no other person in the building on the day in question who did. Also he did not remember what he was specifically doing at the time of the incident and he heard and saw nothing at that time.

On the issue of guilt beyond a reasonable doubt, the supreme court stated in *People v. Jones* (1975), 60 Ill. 2d 300, 307-08, 325 N.E.2d 601:

" * * * a reviewing court in Illinois will not substitute its judgment for that of the finder of fact on questions involving the weight of the evidence or the credibility of the witnesses, and we will not reverse a criminal conviction unless the evidence is such as to raise a reasonable doubt of guilt, * * *. The credible testimony of one identification witness is sufficient to support a conviction if the witness viewed the accused under such circumstance as would permit a positive identification to be made."

In the case before this court, the complainant viewed the defendant under circumstances that permitted a positive identification. As above shown, many facts corroborate her testimony. We conclude that the defendant was proven guilty beyond a reasonable doubt.

## II.

Defendant contends that the refusal of the trial court to allow counsel

for defendant to cross-examine the complainant concerning the amount of damages she sought in a related civil suit against defendant was an abuse of discretion. The trial judge permitted cross-examination of the complainant concerning the civil case but refused to permit questioning on the amount of damages sought. In *People v. Peter* (1973), 55 Ill. 2d 443, 451-52, 303 N.E.2d 398, citing *People v. Gallo* (1973), 54 Ill. 2d 343, 356, 297 N.E.2d 569, and *People v. Halteman* (1956), 10 Ill. 2d 74, 86, 139 N.E.2d 286, the court held:

> "As a general rule the latitude to be allowed in cross-examination of witnesses rests largely in the discretion of the trial court. Such cross-examination should be kept within fair and reasonable limits, and it is only in a case of clear abuse of such discretion, resulting in manifest prejudice to the defendant, that a reviewing court will interfere."

This court does not and cannot find that the decision of the trial court to exclude the amount of civil damages from the scope of the cross-examination was a clear abuse of discretion which resulted in a manifest prejudice to the defendant. The ruling was within the sound discretion of the trial court and will not be disturbed on review.

### III.

Prior to trial the defense counsel made a motion for a continuance based on allegedly prejudicial pretrial publicity. The motion was not based on publicity given to this case concerning the defendant, Bennie Jones, but referred to another case involving the rape of a white girl by a black man. Two newspaper articles concerning that other case, are a part of the record before this court. The motion for a continuance was denied. Defense counsel then moved for individual *voir dire* questioning of prospective jurors. The trial court initially granted this request but later changed this ruling because that type of questioning was found time consuming and unnecessary. Defendant contends he was denied a fair trial by the pretrial publicity. We do not agree.

The cases cited by the defendant in support of his contention concern pretrial publicity given to the case which was actually before the court. They do not concern publicity given to other cases as in the situation at bar. In *People v. Kurtz* (1967), 37 Ill. 2d 103, 108, 224 N.E.2d 817, the court held:

> "Whether a motion for a continuance should be granted because of publicity concerning the case resides within the sound discretion of the trial court. (*People v. Brinn*, 32 Ill. 2d 232.) When an abuse of discretion by the trial court is not found, a court of review will not disturb the trial court's judgment. [Citations.]"

Similarly, in *People v. Torres* (1973), 54 Ill. 2d 384, 389, 297 N.E.2d 142, the court held:

> "The proof of potentially harmful publicity within a community does not alone establish proof of community prejudice as each case must be judged on its own facts. (*People v. Gendron*, 41 Ill. 2d 351, 354.) Our examination of the evidence relating to the publicity and its effect as revealed by the *voir dire* examination convinces us that the defendant received a trial by a fair and impartial jury."

■■ The record before this court indicates that prospective jurors were carefully questioned to determine whether any prejudice existed on the part of any juror. One prospective juror stated during *voir dire* that he had heard about the instant case. A second prospective juror stated that she was aware of the preceding case upon which defendant's claim of prejudice was based. Both of these prospective jurors were excused. Defendant urges that the court's refusal to continue to use individual *voir dire* examination carried with it "the extreme possibility of prejudice to the defendant" so that reversible error resulted. The record, however, does not support this contention. The record shows that when a prospective juror indicated knowledge of any publicity surrounding the instant case, the cautious and able trial judge required the *voir dire* examination to be conducted in chambers. We hold that the defendant was not denied a fair trial due to prejudicial pretrial publicity but that he received a trial by a fair and impartial jury.

### IV.

■■ Defendant cites various examples of trial error which he contends deprived him of a fair trial. Defendant urges that questioning of the defendant's mother as to the age of the defendant's wife was improper. Defendant contends that this line of questioning was pursued to insinuate that the complainant was approximately the same age as the defendant's wife. The trial court sustained the objections made to the questions asked by the prosecutor concerning the age of the defendant's wife. The questions were not answered by the defendant's mother and defendant's motion to strike the questions from the record was granted. This court held in *People v. Pickett* (1976), 35 Ill. App. 3d 909, 915, 342 N.E.2d 766:

> "The fact that objections were sustained to improper questions is not a ground for reversal unless the effect of the questions was prejudicial * * *."

There is no showing in this record that the questions asked by the prosecution resulted in prejudice to the defendant.

■■ Defendant contends that several comments made by the prosecutor during closing arguments were improper and deprived the defendant of a

fair trial. The first of these comments was a statement by the prosecution that the display of the defendant's legs to the jury was "cheap theatrics." No objection was made to this comment at trial. Therefore defendant has waived objection thereto. (*People v. King* (1977), 66 Ill. 2d 551, 559, 363 N.E.2d 838.) Defendant also objects to the statement made by the prosecution that a certain photograph taken of a security guard, which was incorrectly identified by the complainant as the guard who found her after the incident, was a "dime store photograph" brought in by the defense. Defendant claims that this statement was "blatantly untrue." However, while this photograph was in the possession of the prosecution, it was introduced at trial by the defense. Regardless of whether this comment by the prosecution was proper, the trial court sustained the defendant's objection to the remark. This court held in *People v. Hampton* (1977), 46 Ill. App. 3d 455, 462, 360 N.E.2d 1333:

> "* * * improper arguments do not constitute reversible error when the trial court sustains objections to them and instructs the jury to disregard them in their deliberations. [Citations.]"

■■ Defendant objects to comments made by the prosecution in closing arguments that the defense could have brought in weather reports to corroborate the defendant's story that his shoes were wet because he had been walking in snow the morning after the incident and that they could have brought in his underwear to substantiate that he had not had intercourse. This objection is without merit. The statements made by the prosecution were in response to and invited by arguments made by the defense counsel. (*People v. Malone* (1970), 126 Ill. App. 2d 265, 270, 261 N.E.2d 776.) In closing arguments the defense counsel had referred both to the weather reports and the underwear and had stated that the prosecution could have brought them into evidence.

Similarly, the prosecution's reference in closing argument to the failure of Rainey to testify was proper. Rainey was the man whose home the defendant claimed to have visited the morning after the incident. Defense counsel brought up this contention of the defendant in closing arguments and the prosecution properly commented on it.

Defendant also objected to the statements made by the prosecution concerning the credibility of the complaining witness. The trial court sustained defense counsel's objection to these statements and instructed the jury to disregard them. As established in *Hampton*, this does not constitute reversible error.

■■ Defendant further contends that he was denied a fair trial because of two incidents of the use of hearsay during the trial. The defendant alleges that the note written by the complainant at the scene of the incident was utilized by the prosecution. During the course of the trial, one of the police officers identified the pieces of paper the complainant had written

on. On direct examination no other questions concerning the note were asked. On cross-examination the defense counsel read from the note and asked the officer questions about it. Accordingly, it was defense counsel who brought the contents of the notes into evidence and not the prosecution. *People v. Bell* (1972), 53 Ill. 2d 122, 127, 290 N.E.2d 214.

■■ Finally, defendant objects to the evidence, allegedly hearsay, given by one of the nurses who attended the complainant at the hospital after the incident. The nurse testified concerning the responses made by the complainant to questions asked upon her admission to the hospital. She was unable to speak at this time and responded by nodding her head. The testimony concerned the complainant's description of her assailant. This testimony was harmless as the complainant had made a positive identification of the defendant.

## V.

■■ The defendant contends that the jury was incorrectly instructed as to the offense of attempt murder. Defendant contends that the phrase "or to do great bodily harm to" was erroneously included in the instruction. This argument is complicated by a conflict between the common law record and the report of the proceedings. The common law record indicates that the offending language was deleted from the instruction before it was read and given to the jury. The report of the proceedings appears to indicate that the offending language was included in the instruction. The People made a motion to correct the record on appeal to reflect the instruction in proper form. We took the motion for disposition with the case.

In *People v. Jones* (1977), 53 Ill. App. 3d 197, 204, 368 N.E.2d 452, citing *People v. Gregory* (1966), 77 Ill. App. 2d 188, 222 N.E.2d 182, and *People v. Williams* (1963), 27 Ill. 2d 327, 189 N.E.2d 314, this court held:

> "* * * common law records ordinarily import verity, but a reviewing court should resolve a conflict between the common law record and the report of proceedings by looking at the record as a whole."

To the same effect is *People v. Williams* (1963), 27 Ill. 2d 327, 329, 189 N.E.2d 314. The record contains a conference concerning this instruction held by the trial court with the prosecutors and the defense counsel. During the course of that conference it was mutually agreed that the instruction should not contain the language "or do great bodily harm to" or "or great bodily harm." The result of this conference when viewed in conjunction with the common law record, which shows that the offending language was deleted, strongly suggests that the report of proceedings is in error. The People's motion to correct the record of the proceedings to indicate that the language "or do great bodily harm to" or "or great bodily

harm" was deleted from the attempt murder instruction is accordingly allowed. We find no error in this regard.

## VI.

The defendant contends that his conviction for indecent liberties with a child should be reversed. Defendant urges that the convictions for rape and indecent liberties were founded on a single act and that, accordingly, the conviction for the lesser offense cannot stand. The State agrees. The judgment on the conviction of taking indecent liberties with a child is accordingly reversed. *People v. Lilly* (1974), 56 Ill. 2d 493, 495, 309 N.E.2d 1.

## VII.

Finally, defendant contends that the sentence of 50 to 100 years was excessive. Defendant urges this court to consider that the defendant had a good record, was working two jobs and was married. In *People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882, the court held that while a reviewing court has the power to reduce a sentence:

> "We continue to find that the trial court is normally the proper forum in which a suitable sentence is to be determined and the trial judge's decisions in regard to sentencing are entitled to great deference and weight. We therefore reaffirm our long-standing rule that absent an abuse of discretion by the trial court a sentence may not be altered upon review."

See also *People v. Heflin* (1978), 71 Ill. 2d 525, 545, 376 N.E.2d 1367.

We cannot say that the sentence here reflects an abuse of discretion by the trial court. The sentence will not be disturbed.

We find no error in this entire record. Judgement appealed from is accordingly affirmed.

Judgment affirmed.

McGLOON and CAMPBELL, JJ., concur.