(No. 32569.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JESSE VAN DYKE, Plaintiff in Error.

*Opinion filed January 22, 1953—Rehearing denied March 24, 1953.*

JESSE VAN DYKE, *pro se.*

IVAN A. ELLIOTT, Attorney General, of Springfield, and CLIFFORD N. COOLIDGE, State's Attorney, of Bloomington, (HARRY L. PATE, of Tuscola, of counsel,) for the People.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

Jesse Van Dyke, plaintiff in error, was indicted and tried in the circuit court of McLean County for the crime of burglary and larceny. Following a jury trial he was found guilty as charged in the indictment, and on June 29, 1951, was sentenced to the Illinois State Penitentiary for a term of two to five years. He brings this writ of error to review his conviction.

The record indicates that at about 10:00 P.M. on the evening of March 5, 1951, a Kroger store, located at 1110 East Oakland Street in Bloomington, was closed and locked for the night by Glenn Kimmons, the produce manager. On his return to the building the following morning he found the front door pried and standing open about three inches. Inside the store cigarettes were scattered about and mud was tracked in upon the floor. Approximately 300 cartons of various popular brands of cigarettes were missing.

At the trial below, the chief deputy sheriff of Peoria County, Jack Frances, testified that subsequent to March 6, 1951, he, in company with local authorities, went to the home of one Frank Lawson in Pekin. They were permitted to search the house, and in so doing discovered numerous boxes of cigarettes. These boxes were stamped "Kroger Store, 1110 Oakland Street, Bloomington," and with the number 227. That number and address was peculiar to this particular Kroger store, and was stamped upon cigarette cartons in that store.

Frank Lawson testified that about three or four o'clock on the morning of March 6, 1951, Jesse Van Dyke and a man named Keller brought these cigarettes to his home. He purchased the cigarettes from them for $90 and gave the money to Keller.

Earl Keller and Jesse Van Dyke were arrested and charged with the crime. During the trial of Van Dyke, the People called Earl Keller as a witness. He admitted he knew Jesse Van Dyke but stated he was with him at no time during the evening of March 5 or the morning of March 6, 1951. He then claimed his constitutional privilege to refuse to answer any questions pertaining to the crime on the plea of a possible tendency to incriminate himself. The defendant was not permitted to question him concerning the crime because the privilege had been claimed. The court ruled that the defense could, however, ask any question relative to the occurrence if Keller was made a defense witness. Lacking some proof of inconsistent statements, and upon a showing that the defense was notified that Keller might be called as a witness, the court refused to call him as a court's witness at defense counsel's request. Subsequently, plaintiff in error called Keller as his witness, and he again testified that he did not see Van Dyke on the 5th or 6th of March, 1951. On cross examination the State's Attorney questioned Keller about inconsistent statements contained in a statement he gave the assistant State's

Attorney of Peoria County wherein he identified Van Dyke as his accomplice in the commission of the crime. This line of questioning was upheld as proper for purposes of impeachment. It is true that the opinion of this court in the case of *People* v. *Johnson,* 314 Ill. 486, states that where A calls a witness and obtains his testimony, and B afterwards calls him, A cannot impeach the credibility of the witness by proving that he made statements out of court different from those made upon the witness stand. Such an all-inclusive pronouncement may well be true where the purpose of the impeachment is to demonstrate that the witness is generally unworthy of belief. To extend this rule to the extreme bounds of preventing a party from showing the witness made previous statements inconsistent with a statement delivered from the stand at the instance of the opposing party, would be a hard and harsh application. It certainly would not be an aid to the promotion of justice. It is our considered opinion that the rule should never preclude the proof of a prior declaration inconsistent with that stated in testimony. (See, *Jones* v. *People,* 2 Colo. 351.) To the extent that the *Johnson case* is contrary to our determination here, it is not adhered to. No error resulted from this impeachment of Earl Keller.

It is complained that the plaintiff in error was not proved guilty by competent evidence beyond a reasonable doubt. Van Dyke maintains his conviction could not stand without the testimony of Frank Lawson, an ex-convict and, by his own admission, an accessory after the fact to this crime. The fact that Lawson was an ex-convict, having been convicted of armed robbery, and his admission of having purchased this stolen merchandise was known to the jury. The credibility of the witnesses presented, as well as the weight of the evidence, are for the jury to determine and the court will not substitute its judgment therefor. (*People* v. *Long,* 407 Ill. 210; *People* v. *Arnett,* 408 Ill. 164.) The jury obviously determined that Lawson was

worthy of belief in this instance. Moreover, the testimony of a confessed accomplice is sufficient upon which to base a conviction even though it be uncorroborated, if it is of a character to convince a jury beyond a reasonable doubt of the guilt of the accused. Nothing in this record negates Lawson's statement that Van Dyke sold these cigarettes to him, nor that Van Dyke was in his home early on the morning of March 6.

Plaintiff in error also claims that he was unduly restricted in his cross-examination of Earl Keller, while the court was extremely lenient to the State in its cross-examination of the same witness when called by the defense. The assignment is without merit. It is a fundamental principal of law that cross-examination cannot exceed the scope of the direct examination. Defense counsel endeavored to explore on cross-examination an area which the State was not permitted to penetrate due to the witness's claim of constitutional privilege. When he was cross-examined by the People for impeachment purposes, the State only inquired about a statement inconsistent with his testimony on direct examination by the People. We have already held above that this was proper impeachment.

Plaintiff in error complains that instruction No. 7 given in behalf of the People amounts to error in that it attempts to define reasonable doubt. We have held that instructions defining reasonable doubt are to be condemned. (*People* v. *Schuele,* 326 Ill. 366.) However, an instruction in the identical language employed here was properly held neither to define the meaning of the words "reasonable doubt," nor to incorrectly state any principle of law, in *People* v. *Moore,* 368 Ill. 455. It is not, therefore, subject to attack here.

It is also urged by plaintiff in error that the court erred in giving People's instructions 5 and 13. He claims that instruction No. 13 is misleading and inapplicable to the facts in the case, and improperly placed on the defendant

the burden of showing the impossibility or high improbability that he could have committed the act charged, before he could avail himself of the defense of alibi. Instruction No. 5, it is complained, requires that the proof of alibi, taken in connection with all of the other evidence, must cover the whole time of the commission of the crime so as to render it impossible or highly improbable that defendant could have committed the act. Unless the proof covers the whole time of the commission of the crime the defense of alibi is unavailable. There is no evidence in this record of the time required to commit the crime, or just when it was committed. Plaintiff in error maintains the instructions allow the jury a double standard by which to determine guilt—whether, consistent with the evidence, the act in question was (1) impossible, or (2) highly improbable—during the whole time of the commission of the crime, where there is no evidence as to when the act occurred.

The record indicates that plaintiff in error resided in Peoria with Mr. and Mrs. Robert Penn. The Penns testified that they and Van Dyke all retired about 10:30 P.M. on March 5, 1951, and Van Dyke was in his bed asleep when they arose at 5:30 A.M. on March 6. Plaintiff in error admits that the act could have occurred at any time after 10:00 P.M. on March 5, and prior to 8:00 A.M. on March 6. Peoria, Bloomington and Pekin are in such close proximity that the act could have occurred during any three- or four-hour period between 10:00 P.M. and 5:00 A.M. It is that period of time for which plaintiff in error must account in order to avail himself of alibi. The Penns have not accounted for those hours. It is unnecessary for the People to prove the exact instant the act occurred and the period of time necessary to its consummation. To avail himself of alibi it is necessary for a defendant to account for his whereabouts for the time shown during which the act could have been consummated. These same instruc-

tions, taken together, have been approved by this court, and cannot be the basis of a valid objection here. (*People* v. *Thompson,* 321 Ill. 594; *People* v. *Kendall,* 357 Ill. 448.) That approval has been reaffirmed in *People* v. *Gasior,* 359 Ill. 517, *People* v. *Lynn,* 387 Ill. 549, and *People* v. *Leach,* 398 Ill. 515. The error urged is not well taken, and the instructions again merit the approval of this court.

Many other errors have been assigned by plaintiff in error, but, not having been argued, they are deemed waived and are accorded no consideration. None of the assignments urged amount to error, therefore the judgment of the circuit court of McLean County is affirmed.

*Judgment affirmed.*