People of the State of Illinois, Appellee, v. Gary Lee Stoudt, Appellant.

Gen. No. 66-55.

Third District.

December 15, 1967.

Rehearing denied January 24, 1968.

Donald E. Blodgett, of Rock Falls, and Besse, Besse, Frye & Arnold, of Sterling, for appellant.

L. E. Ellison, State's Attorney, of Morrison, for appellee.

ALLOY, J.

Defendant Gary Lee Stoudt was convicted of the murder of Helen Van Densen. The jury did not recommend the death penalty and he was sentenced to the Illinois State Penitentiary for not less than 25 nor more than 50 years.

The record discloses that defendant and the victim Helen Van Densen met at a tavern in Sterling, Illinois, on the evening of December 27, 1965. Defendant had apparently consumed enough liquor to make him drunk at the time. Defendant and the victim left the tavern together and drove off in defendant's automobile. Defendant admitted that he drove the victim to her home in northeast Sterling and when she refused to get out of the car, he proceeded with her as a passenger to a gasoline station where the gas tank of the automobile was filled. He then proceeded in the direction of Sterling. Defendant testified that this is the last he remembered until the following morning.

The corpse of Helen Van Densen was found and viewed in a cornfield on the outskirts of Sterling, Illinois, on the morning of December 28, 1965. The body had been badly mutilated. Both breasts had been removed with a knife. There was a long vertical incision extending from the lower chest down to and through the anus, through the abdomen and through the genitalia. There were also other

142

cuttings and lacerations. The pathologist testified that he found four bullet wounds in the left side of the face of the victim and that, in his opinion, death was due to the bullet wounds of the head. Pictures had been taken of the body in the condition in which it was found (both black and white and color slides) showing the nature of the cutting and mutilation of the body.

Defendant's girl friend, one Patricia K. Parker, was called as a court's witness over objection of defense counsel. This witness described herself as defendant's girl friend and testified that they planned to marry after Stoudt got his divorce and that they had spent nights together at her home. The evidence disclosed that Stoudt came to the home later than expected, around 11:30 p. m.; that he turned off the lights before coming in; that he immediately went into the bathroom and was in there with water running for around half an hour and asked the witness to get him a pair of shorts which she did. He thereafter came out of the bathroom wearing only the shorts. He was carrying a pile of wet clothes which he thereupon took to the basement and burned in the furnace.

The evidence also disclosed that the automobile belonging to defendant had blood over the front seat and certain other places in the automobile. A couch cover had been taken from the parker apartment to cover the front seat. The witness Parker also stated that she had wiped up the floor of the bathroom with a towel which had been obtained from a motel. An expert witness compared blood samples taken from the towel and various other areas including the automobile and confirmed that the blood was the same type blood as that taken from the victim's body. A ballistics expert testified that the bullet wounds in the decedent's head were caused by bullets which were fired from the same .22 caliber revolver which had belonged to witness, Patricia Parker. There was evidence that this

143

revolver was in possession of the defendant on the night in question.

Defendant took the stand in his own behalf and admitted that he had left the tavern with the deceased and remembered driving her to the place where she said she lived. She decided not to remain because another car was there, and defendant drove away from there. He remembered also purchasing the gasoline to fill his automobile tank and also remembered driving in the direction of Sterling. Defendant stated that he could not remember anything which occurred the rest of the night until he woke up the following morning in Patricia Parker's apartment. In answer to questions as to whether he had cut up the deceased, he replied simply in the negative, and on one occasion replied "Not that I remember."

A psychiatrist who testified on behalf of the State in rebuttal indicated that defendant was not mentally ill but was what is described as a "sociopathic" personality. He stated that it involves the pattern in an individual of not accepting responsibility for the past with a tendency to run away; that this made defendant unable to give an intelligent evaluation of what did or did not take place or give reasons why. The psychiatrist stated affirmatively that defendant had the ability to appreciate the criminality of the act of killing and that defendant was not mentally defective. He likewise stated that, on the assumption that defendant killed Mrs. Van Densen and mutilated her and went to the apartment of his girl friend where he turned off the lights and burned the wet clothes and did the other acts recited in the statement of facts, he had no reason to feel that there did preexist a mental illness which would have interfered with defendant being able to make a decision. He stated that defendant definitely had the ability to appreciate the criminality of his act in killing Mrs. Van Densen. On cross-examination, the psychiatrist stated that defendant has the ability to conform his behavior to law but does not have the desire

or willingness to do so. He also stated that the inability to recall events claimed by defendant did not indicate a mental illness, but rather an unwillingness to accept the reality of the situation. He characterized such inability to recall as a "willful thing."

On appeal in this court, defendant contends that the trial court improperly called Patricia Parker, the girl friend of defendant, as the Court's Witness where the State failed to show a material injustice would otherwise result or compelling reason for doubting her veracity; that the trial court improperly allowed colored slides and photographs of the victim's mutilated body into evidence and to be viewed by the jury; and that after hearing the testimony of the State's psychiatric expert, the trial court had reason to believe the defendant was incompetent to stand trial and erred in not suspending the proceedings and conducting a hearing to determine defendant's competency.

■ ■ Calling of a witness as a Court's Witness is a matter within the discretion of the trial court where it appears that the State's attorney cannot vouch for the credibility of the witness and there is a showing that manifest injustice would result if such witness did not testify. Unless such discretion is abused, it would not constitute reversible error. In People v. Banks, 7 Ill2d 119, 129 NE2d 729, a woman was called as a court's witness who was the paramour of the defendant charged with murder. She was also engaged to be married to him even though they were both married to others. The Supreme Court in that case indicated that there was ample cause for the State's attorney to doubt her veracity and integrity and that yet without her testimony there was a definite likelihood of a miscarriage of justice. The relationship as between the witness and the defendant in this case is almost identical as that found in the Banks case. In the case before us, the trial court in permitting witness Patricia Parker to be called as a court's witness,

145

stated that she was Stoudt's girl friend; that she had spent nights with him at her home; and that they planned to be married after Stoudt got his divorce. The close involvement of witness Parker with defendant was obvious from the record. The murder weapon was obtained from her premises and the evidence showed the presence of blood brought to the premises by defendant of the same type as that of the decedent. The description of defendant's behavior immediately following the death of Mrs. Van Densen was significant and important in developing the State's case and could have been described as being essential to prevent a miscarriage of justice. The court's witness need not be an eyewitness (People v. Siciliano, 4 Ill2d 581, 123 NE2d 725). We, therefore, find no reversible error in the circumstance that witness Patricia Parker was called as a court's witness under the facts in this case.

■ ■ In the case before us, the crime was obviously committed with such extreme atrocity and violence that the slides and pictures could add little to inflame or prejudice the jury. The colored slides were exhibited to this court on appeal and the court's reaction was that the actual description in the testimony as to the nature and extent of the wounds could easily portray a more gruesome image than that shown by the photographs. The pathologist testified as to the condition of decedent's body and his findings. Introduction of the photographs on the record in this case in our judgment could not have improperly influenced the jury. We draw no distinction between the use of black and white photographs and colored ones in evidence. It is apparent from the record that the photographs illustrated the testimony of the pathologist as to the nature and extent of the wounds of the deceased. They also tended to connect defendant with the commission of the offense since the nature of the wounds were such that they could have been inflicted

146

with a large sharp knife. The knife which was in defendant's possession within 24 hours of the victim's death had human blood on it of the same type as that of decedent. The photographs may also have negatived the defenses of intoxication and insanity since the nature of the wounds showed a careful well-coordinated attempt to dismember the body of the victim. It is also notable that the indictment alleged the decedent was killed with a gun or a knife. Even though the pathologist concluded that she was killed with a gun, the State still had the right to offer proof in support of one of the counts of the indictment, namely, that she was killed with a knife. Under the record in this case, the admission of the photographs was discretionary with the trial judge (People v. Myers, 35 Ill 2d 311, 220 NE2d 297; People v. Hoffman, 32 Ill2d 96, 203 NE2d 873). We do not believe that such discretion was abused. We, therefore, conclude that there was no reversible error in the submission of the photographs and colored slides to be viewed by the jury.

 The final question is whether the trial court erred in failing to conduct a sanity hearing. The statute provides that if during the trial the court has reason to believe that defendant is incompetent, the court shall suspend the proceedings and conduct a competency hearing (1965 Ill Rev Stats, c 38 §§ 104–1, 104–2). An incompetent under this rule is a person who is unable because of physical or mental conditions to understand the nature and purposes of the proceedings against him or to assist in his defense. There is no evidence in the record that defendant had either a physical or a mental condition which would make him unable to understand the nature and purposes of the proceedings. Defendant's contention is that because of his mental condition he was unable to assist counsel. The psychiatrist, in his testimony, stated that upon an assumed inability of Gary Stoudt to recall events between 9:30 p. m. on the night in question and

147

7:00 a. m. of the following morning, he could not be of much value to his attorney. The psychiatrist did not say that defendant could not recall but only that Gary Stoudt stated that he could not recall. The conclusion of the psychiatrist based on the record before us indicates that Gary Stoudt would not recall because he did not desire to do so. It was not a case of not being able to recall. While in a proper case, the inability to assist counsel may arise and require the conduct of a separate sanity hearing, the duty of the trial court to cause a sanity hearing to be held is only imposed when evidence or circumstances give rise to a bona fide doubt as to the accused's sanity at the time of the trial. (People v. LeMay, 35 Ill2d 208, 210, 220 NE2d 184; People v. Lego, 32 Ill2d 76, 78, 203 NE2d 875.) The defendant in the case before us, sat through the five-day trial with no unusual outbursts or irrational behavior. He took the stand and testified at length responsively to attorneys' questions both on direct and cross-examination. The trial court observed him during the five-day period and observed him on the stand. He heard the testimony of Patricia Parker as to defendant's actions immediately after the time of the murder. The court had good reason to conclude, in the light of all this evidence in the record, that the impromptu remark by the People's psychiatrist, as to defendant's value to his attorney on the trial, was not sufficient to raise a bona fide doubt as to defendant's competency so as to require a sanity hearing.

 The fact that there may have been technical errors in trial of the cause should not call for a reversal. It is apparent from the record that real justice has not been denied or that the verdict resulted from any such error. There was strong competent evidence in the record which established defendant's guilt and in our judgment the errors alleged, even if they did in fact constitute

errors, were not so prejudicial as to justify a reversal in this cause.

The judgment of the Circuit Court of Whiteside County will, therefore, be affirmed.

Affirmed.

STOUDER, P. J. and CULBERTSON, J., concur.