THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MELVIN BOYD *et al.*, Defendants-Appellants.

(No. 57686; ▮▮▮▮▮▮▮▮)

First District (4th Division)—September 25, 1974.

*Rehearing denied October 24, 1974.*

Paul Bradley and William K. Hedrick, both of State Appellate Defender's Office, of Chicago, for appellants.

Bernard Carey, State's Attorney, of Chicago (James S. Veldman and Michael J. Polelle, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE ADESKO delivered the opinion of the court:

The defendant-appellants were indicted for the offenses of robbery and aggravated battery and after a jury trial the defendants were found guilty of both crimes. The defendants were sentenced on the robbery charge and Boyd received a sentence of 3 to 6 years in the penitentiary and Richmond was sentenced to a term of from 5 to 15 years in the penitentiary. The defendants have raised four issues in this appeal. They

contend that the trial court erred in refusing to grant their motions to suppress identification testimony; that the trial court placed a burden upon the defense of calling adverse witnesses as their own witnesses and thereby denied defendants the right to due process of law, counsel and confrontation; that the trial court unduly restricted the defense cross-examination of two witnesses; and that the evidence was insufficient to support the convictions. In addition defendant Boyd maintains that his sentence must be modified pursuant to the provisions of the Illinois Unified Code of Corrections.

The complaining witness, Robert Treskow, testified that on October 18, 1971, at approximately 11 P.M., he was walking east on Wilson Avenue in Chicago. He stated that as he crossed an alleyway and started up on the sidewalk two men grabbed him on each side and a third man grabbed him from behind. Mr. Treskow turned to his right and left and looked at the assailants who were on either side of him. He stated that the men dragged him into the alley and that he was hit below his left eye. Treskow was knocked to the ground and beaten and then he passed out. He stated that the two defendants and a third man whom he could not identify were the ones who beat and kicked him. Treskow did not know how long he was unconscious but when he regained consciousness he noticed his shirt was bloody and his pants had been ripped where he carried his wallet. He testified that his wallet was missing and that it contained approximately $4 and his identification cards which were contained in a plastic packet. He stated he left the alley and walked west on Wilson Avenue to a tavern, and asked someone to call the police.

A police officer arrived at the tavern and Treskow had a conversation with him. Treskow then got into the squad car and was taken to the Foster Avenue Police Station. When Treskow arrived at the police station, he was taken into a room with several desks. He stated he had a conversation with an officer-clerk and that this officer gave back his identification cards. Treskow testified that another policeman, Officer Freeburg, came into the room and took him into another room and asked Treskow if he could point out the people who had robbed and beaten him. Treskow stated that there were more than 10 people in the room but he was not sure of the exact number. He described the people in the room as civilians and dressed in either jackets or shirts and ties and sweaters. Treskow stated that he identified two men who were in the room as his assailants. These two men were the defendants. Treskow also made an in-court identification of the defendants as the men who robbed and beat him. He stated that at the time he identified the defendants at the police station they were not handcuffed. After the iden-

tification at the station, Treskow was taken to the emergency room at Weiss Memorial Hospital.

Upon cross-examination Treskow stated that he observed the assailants on either side of him for less than 5 minutes. He was then asked if he saw them for less than a minute and he responded that he looked to the left and to the right but for how long in each direction he did not know. He was asked if he was able to determine whether all three men who attacked him were Indians and he replied that he was able to ascertain that two of them were. However, Treskow did admit that on a previous occasion he had stated that all three men were Indians although he never saw the third man. Treskow was also questioned during cross-examination about the description of his assailants that he had given to the police. He stated he gave a description of three Indians but he was only able to identify two. One was wearing a light jacket and the other was wearing a blue jacket and Treskow also thought he had on blue denim pants. Treskow stated that he was not informed while at the police station how the police had recovered his identification cards nor was he told before he entered the room where he made the identification that the police had arrested two suspects.

On redirect examination Treskow stated that when he was first grabbed he was on a sidewalk next to the street. He was then asked what the lighting conditions were and he responded, "As I recall the North Shore Church is right across the street, a large church so the street side is fairly well lighted." However, Treskow did state it was dark in the alley.

The next witness called by the prosecution was Officer Lonnie Sides of the Chicago Police Department. He testified that on October 18, 1971, at approximately 11 P.M. he responded to a robbery in progress call. When Officer Sides arrived in the area of 1020 West Wilson, he observed Mr. Treskow. He stated that Treskow was bleeding severely from the face. Officer Sides took Treskow to his squad car, got a description of the assailants from Treskow and an account of what had happened. Sides then sent a flash message over his radio. During cross-examination Officer Sides stated that Treskow told him that one of his assailants was 22 to 30 years old and the other was between 30 and 40. According to Sides, Treskow also described the approximate height and weight of the robbers and told him that his assailants were Indians. Officer Sides also stated that two other policemen, Officers Hilden and Freeburg, arrived at the scene and told Sides to come over to their vehicle. Sides walked over to their squad car and stated that he observed the two defendants in the back seat. Officer Sides also stated that Mr. Treskow did not come over to the other squad car.

Officer Michael Hilden of the Chicago Police Department testified for the prosecution and stated that on October 18, 1971, at approximately 11 P.M., he and his partner, James Freeburg, were on patrol in a squad car. They were southbound on Sheridan Road and as they approached Lawrence Avenue they received a radio communication. Officer Hilden stated that as they approached Lawrence Avenue and Kenmore, he and his partner observed two men walking north on Kenmore. According to Officer Hilden, the two men were Indians and one was wearing a white coat and the other a blue jacket. The officers curbed their vehicle and called the two men over to the squad car. Officer Hilden made an in-court identification of the defendants as the men who were stopped. Officer Hilden testified that it was approximately 2 minutes after the radio communication was received that he observed the two men. He also stated that the location where he observed the defendants was approximately two blocks from the scene of the robbery. Officer Hilden testified that as the two men walked towards the squad car, he observed the defendant Boyd drop a packet out of his rear pocket. According to Hilden, Officer Freeburg picked up the packet and then the two men were placed in the rear of the squad car. In the squad car Officer Hilden examined the packet and observed that the identification cards in it bore the name of Robert Treskow. Officer Hilden stated that they then proceeded to the intersection of Wilson and Kenmore where Officer Sides was located. Officer Hilden had a conversation with Officer Sides and then the defendants were taken to the 20th District Police Station.

The next witness to testify on behalf of the prosecution was Officer James Freeburg. His testimony was substantially similar to that of Officer Hilden in regards to encountering the defendants on the evening in question. Officer Freeburg also stated that he observed the defendant Boyd drop a packet from his rear pocket as he walked toward the squad car. Officer Freeburg further testified that when they arrived at the 20th District Police Station, the two defendants were placed in a review room along with approximately a dozen other people. According to Freeburg, approximately 3 or 4 minutes after he and Officer Hilden and the defendants arrived Officer Sides brought Mr. Treskow into the station. Officer Freeburg stated that Treskow was put in another room that adjoined the review room. Officer Freeburg left the review room and got Mr. Treskow and brought him into the review room. Officer Freeburg stated that he asked Treskow if he could identify his assailants and that Treskow identified the two defendants.

Upon cross-examination Officer Freeburg stated that the description he and Officer Hilden received over the radio was of three male Indians. He also stated one Indian was described as wearing a white coat and

the other as wearing a blue jacket. However, Officer Freeburg could not recall if the radio broadcast also included a description of the assailants' ages, heights and weights and color of hair. Officer Freeburg also stated that the two defendants were the only Indians in the review room at the time Treskow identified them.

The defendant, Melvin Boyd, testified in his own behalf. He denied committing the crimes with which he was charged. He also denied ever having Mr. Treskow's identification packet in his possession and stated he did not drop it when he was stopped by the police. Boyd testified that after he and Richmond were placed in the squad car they were taken to an alley at Lawrence and Wilson. He stated that Officer Sides brought Mr. Treskow over to the squad car and asked Treskow if these were the men. According to Boyd, Treskow stated, "No, sir, them ain't the two guys, the guy had a white shirt on."

The first issue raised by the defendants is that the trial court erred in not granting their pre-trial motion to suppress the identification testimony of the complainant, Robert Treskow. The defendants contend that the pre-trial identification procedure was unnecessarily suggestive and that the State failed to prove by clear and convincing evidence that an adequate independent origin existed for the identification. While we agree that the pre-trial identification procedure utilized in the case at bar was unnecessarily suggestive, we are of the opinion that an adequate independent origin existed for the identification and therefore, the trial court did not err in denying the motion to suppress the identification testimony of Robert Treskow.

At the hearing on the motion to suppress, Mr. Treskow testified that Officer Freeburg led him into a room that contained approximately 15 to 20 people and asked if he could identify the men who had robbed and beaten him. Treskow could not recall if any uniformed police officers were in the room. He identified the defendants as his assailants and stated that the defendant Boyd was walking around the room trying to get a cigarette. Treskow stated that Boyd approached him and came within 5 or 6 feet and then turned around and went back. Treskow testified that Boyd had a light three-quarter length jacket on and Richmond was wearing a blue jacket and denim trousers. According to Treskow, Richmond was seated in the room and neither man was handcuffed. Treskow denied that any police officer told him that they had arrested someone that they would like him to view.

Officer Hilden also testified at the hearing on the motion to suppress and stated that defendants were placed in a review room and that approximately 10 or 12 people were in the room. Officer Hilden stated there were about four uniformed policemen in the room and that Officer

Freeburg brought in Treskow and that Treskow identified the defendants immediately.

Officer Freeburg testified that there were approximately a dozen people in the review room and that four or five of them were uniformed policemen. He stated that only two of the people in the review room were Indians and that they were the defendants. Officer Freeburg was asked if he told Treskow that there were suspects in custody and responded, "I told him there were two people in the room." Freeburg also testified that Treskow identified both defendants as his assailants.

■■ The law concerning the admissibility of identification testimony has been well established and it was succinctly set forth in *People v. Tuttle*, 3 Ill.App.3d 326, 330, 278 N.E.2d 458, 461 (1972). The court there stated:

> "In order to suppress an in-court identification on the ground of improper pre-trial identification procedures, a defendant bears the burden of proving two facts. First, he must establish that the pre-trial identification procedures were so suggestive as to give rise to a very substantial likelihood of irreparable misidentification. (*Simmons v. United States*, 390 U.S. 377, 384; *People v. Holiday*, 47 Ill. 2d 300, 307-308.) Second, to the extent that suggestive procedures are established, they must be shown to have been 'unnecessary' under the totality of the circumstances. (*Stovall v. Denno*, 388 U.S. 293, 302; *People v Lee*, 44 Ill.2d 161, 169.) However, even if a defendant successfully establishes the above two elements, an in-court identification may nonetheless be admissible if the State shows 'by clear and convincing evidence, that such in-court identification had an independent origin, arising from other uninfluenced observation of the defendant.' *People v. McMath*, 104 Ill.App.2d 302, 313; affirmed, 45 Ill.2d 33; see also *People v. Fox*, 48 Ill.2d 239, 245."

We are of the opinion that the pre-trial identification procedure utilized in the case at bar was suggestive and did present a substantial likelihood of irreparable misidentification.

■■ The defendants were placed in a review room with approximately ten other people. Four or five of the individuals in the room were uniformed policemen. The defendants were the only Indians in the room and all the other people were physically dissimilar. The only people in the room wearing clothing similar to that described by the complaining witness were the defendants. In addition the statement by Officer Freeburg that there were two people in the room is also a suggestive factor that must be considered. *Martinez v. Turner*, 461 F.2d 261 (10th cir. 1972).

In determining whether a pre-trial identification procedure is unnecessarily suggestive, the totality of the circumstances surrounding the confrontation must be considered. (*Stovall v. Denno*, 388 U.S. 293, 18 L.Ed.2d 1199, 87 S.Ct. 1967 (1967).) When this is done in the instant case, the inevitable conclusion is that no feasible choices for identification were presented to the complaining witness. The case at bar is similar to *People v. Morris*, 131 Ill.App.2d 443, 266 N.E.2d 444 (1970), and *Martinez, supra*. As in those cases the defendants in this case stood out suggestively and prominently in the pre-trial confrontation. The pre-trial identification procedure utilized in the case at bar was suggestive and should not be condoned or emulated. However, we are also of the opinion that an adequate independent origin existed for the identification.

The factors to be considered by a court in determining whether an independent basis exists for an in-court identification were first enunciated by the United States Supreme Court in *United States v. Wade*, 388 U.S. 218, 241, 18 L.Ed.2d 1149, 1165, 87 S.Ct. 1926, 1940 (1967), and were reiterated in *Neil v. Biggers*, 409 U.S. 188, 199-200, 34 L.Ed.2d 401, 411, 93 S.Ct. 375, 382 (1972). The Supreme Court stated in *Biggers*:

> "* * * the factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of the certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation."

In the case at bar, Treskow spent approximately 1 to 5 minutes with his assailants and the initial observation occurred in a reasonably well-lighted area. Treskow testified that when he was grabbed he turned to his right and left and looked at the assailants who were on either side of him. This occurred at a time when Treskow was still conscious and attentive to the events taking place. While there was conflicting evidence as to the degree of thoroughness of Treskow's prior description of the defendants, there is no doubt that he was able to determine that they were Indians and the style and color of the outer clothing they were wearing. Treskow did not hesitate in identifying the defendants and did so immediately upon entering the review room. The length of time between the robbery and the confrontation was relatively short. When we consider all of these factors, it is our opinion that an adequate independent origin existed for the identification and the trial court, therefore, did not err in denying the motion to suppress the identification testimony of the complainant, Robert Treskow.

■■ The defendants in the case at bar were represented by separate

assistant public defenders. Defendant Richmond was represented by a Mr. Kunkle and defendant Boyd by a Mr. Bloom. At the hearing on the motions to suppress identification testimony Mr. Kunkle called Officer Sides as a witness and questioned him on direct examination. Mr. Bloom then attempted to cross-examine Officer Sides but the trial court would not permit him to do so. Bloom was allowed to conduct a direct examination of Officer Sides and proceeded to conduct a lengthy and thorough examination. In denying Bloom's attempt to cross-examine Sides the trial court stated:

> "You are not going to have the opportunity of cross examining, if you don't join in the motion, if it's not your motion present your witness on your motion, but I combined them for this motion. Proceed, it's direct. Proceed."

It is evident from this statement and the remainder of the record of the suppression hearing[1] that the trial court was treating the individual motions of the defendants to suppress identification testimony as combined. Indeed at one point the assistant State's Attorney prosecuting the case asked the trial court, "Are these motions combined?" and the court responded, "Yes, proceed." The defendants contend that the trial court erred in not affording assistant Public Defender Bloom the opportunity to cross-examine Officers Sides.

The defendants maintain that the trial court's refusal to allow Mr. Bloom the opportunity of cross-examining Officer Sides denied defendants their constitutional rights to confrontation, counsel and due process of law. Defendants further maintain that the trial court ruled that any petitioner could not cross-examine witnesses and characterize the issue as whether any petitioner's attorney can cross-examine suppression witnesses even the witnesses called by the petitioner himself. The thrust of the defendants' argument on this issue is that in a hearing on a motion to suppress identification testimony the petitioner must demonstrate the existence of taint but that the restrictions placed on a petitioner in the circuit court do not allow a petitioner to adequately raise the issue of witness credibility. Defendants specifically point to the fact that a petitioner is not allowed to cross-examine, impeach, or ask leading questions of the witnesses he calls and maintain that what is at issue is the constitutional adequacy of the pre-trial devices for protecting defendants.

---

[1] The record contains two motions to suppress identification testimony. One is on behalf of Melvin Boyd and the other on behalf of Roy Richmond. However, both motions were signed by assistant public defender William J. Kunkle, Jr. It should also be noted that the trial court's comments that the two motions to suppress were combined were not objected to by either assistant public defender. Both attorneys remained silent when these comments were made.

The defendants contend that at some point suppression witnesses should be treated as though they were court witnesses.

■■ We do not agree that the trial court's refusal to allow Mr. Bloom to cross-examine Officer Sides denied defendants their constitutional rights to confrontation, counsel, and due process of law. The contention of the defendants that the trial court ruled that any petitioner could not cross-examine witnesses is erroneous. The trial court ruled that assistant public defender Bloom would not be allowed to cross-examine Sides because the motions had been combined. The two motions to suppress were identical motions and both were signed by Assistant Public Defender Kunkle. There was no objection made to the consolidation of the motions and Mr. Bloom never made an offer of proof as to any impeaching material he wished to introduce to the court. Although the trial court's ruling is somewhat ambiguous, the record indicates that the reason the motions were consolidated was that the evidence for one defendant would be the same for the other defendant. Therefore, although Officer Sides had been called as a witness by Kunkle, he was in effect also Bloom's witness. The trial court's ruling was correct and in accord with the general rule of law that one may not cross-examine or impeach his own witness. (*People v. Kraus,* 377 Ill. 539, 37 N.E.2d 182 (1941); *People v. Wesley,* 18 Ill.2d 138, 163 N.E.2d 500 (1959).)

■■■ The defendants question the constitutional adequacy of the pretrial devices for protecting defendants and contend that the restrictions placed on a petitioner at the trial court level do not allow a petitioner to raise the issue of witness credibility adequately. At a hearing on a motion to suppress identification testimony, the question before the court is whether the identification was improperly influenced by suggestive procedures and if so does an adequate independent basis for the identification exist. The relevant areas of inquiry at such a hearing are the circumstances surrounding the crime; the circumstances of the identification confrontation; and the procedures utilized by the police in having a witness view a suspect. These areas can usually be adequately explored through direct examination. However, if counsel for a defendant finds it necessary to draw in question a witness' credibility procedures exist for doing so.

■■ Illinois Supreme Court Rule 238 deals with hostile witnesses. It states:

> "If the court determines that a witness is hostile or unwilling, he may be examined by the party calling him as if under cross-examination. The party calling an occurrence witness, upon the showing that he called the witness in good faith and is surprised

by his testimony, may impeach the witness by proof of prior inconsistent statement." (Ill Rev. Stat. 1971, ch. 110A, par. 238.)

In addition a witness may be called as a court's witness or declared a court's witness during the course of questioning and cross-examined by either side. As stated in *People v. Mostafa*, 5 Ill.App.3d 158, 165, 274 N.E.2d 846, 851 (1971):

> "The principles governing the calling of a court witness are now well established in our criminal law. A witness may be made a court witness, and subjected to cross-examination by either side, where, for sufficient reasons shown, his integrity or veracity is doubtful and neither side desires to vouch for his testimony. (*People v. McKee*, 39 Ill.2d 265, 270, 235 N.E.2d 625.) Calling a person as a court witness rests in the sound discretion of the trial judge. (*People v. Stoudt*, 90 Ill.App.2d 140, 232 N.E.2d 800.) The party requesting that a witness be called by the court must make a showing that manifest injustice would result if the request were refused. *People v. Johnson*, 333 Ill. 469, 165 N.E. 235; *People v. Routt*, 100 Ill.App.2d 388, 241 N.E.2d 206." (Accord, *People v. Robinson*, 14 Ill.2d 325, 153 N.E.2d 65 (1958); *People v. Wesley*, 18 Ill.2d 138, 163 N.E.2d 500, (1959).)

The case of *People v. Catavdella*, 31 Ill.2d 382, 202 N.E.2d 1 (1964), is an example of where counsel for the defendants availed themselves of the procedures whereby they were permitted to cross-examine a witness whom they had called at a hearing on a motion to suppress certain evidence. Counsel for the defendants in the instant controversy did not seek to utilize either Supreme Court Rule 238 or the procedure of having a witness declared a court's witness.

We do not agree that there is any question as to the constitutional adequacy of the pre-trial devices for protecting defendants. While a defendant who moves to suppress identification testimony bears the burden of demonstrating the existence of taint, adequate procedures exist to raise the issue of witness credibility if that should become necessary. The defendants contend that at some point suppression witnesses should be treated as though they were court witnesses. However, a suppression witness can be called as a court's witness if sufficient reason is shown to doubt the witness' integrity and veracity.

The defendants have cited the United States Supreme Court case of *Pointer v. Texas*, 380 U.S. 400, 13 L.Ed.2d 923, 85 S.Ct. 1065 (1965), and assert that the holding in *Pointer* should be applied to the instant controversy. However, the *Pointer* decision is totally inapposite to the defendants' situation. In *Pointer* the defendant was arrested and brought before a judge on a preliminary hearing. The chief prosecution witness

testified but Pointer, who was not represented by counsel, did not cross-examine the witness. At trial it was established that the chief witness had moved and did not intend to return to Texas. The prosecution then introduced the transcript of the child witness' testimony at the preliminary hearing as evidence against Pointer. Pointer's trial counsel objected on the basis that utilization of the transcript would be denial of Pointer's right to confront the witnesses against him. The Supreme Court agreed that the use of the transcript to convict Pointer denied him a constitutional right. However, it is readily apparent that the facts in the case at bar are totally different from those in *Pointer.* As the State points out in its brief, in the instant controversy defense counsel were permitted to question Officer Sides at the combined hearing on the motions to suppress identification testimony. In addition they cross-examined Sides at the trial and the State never attempted to introduce at trial the testimony taken at the combined hearing. The *Pointer* decision is simply not applicable to the defendants' situation.

The defendants also cited *People v. Robinson,* 46 Ill.2d 229, 263 N.E.2d 57 (1970), as authority for the proposition that our supreme court has struck down attempts to restrict relevant questioning by defense counsel at a suppression hearing. However, in *Robinson,* the defense counsel was not permitted to question a suppression witness in regards to any relevant areas. In the case at bar both defense counsel questioned Officer Sides and the examinations were lengthy and thorough. Defendants also rely on *People v. Nudo,* 131 Ill.App.2d 930, 268 N.E.2d 894 (1971), but that decision is also not persuasive authority for the defendants' position. We are of the opinion that the trial court's refusal to allow Assistant Public Defender Bloom to cross-examine Officer Sides was not a denial of the constitutional right to confrontation. Similarly, we find no merit in the contention that the rights to counsel and due process of law were denied.

The next issue raised by the defendants is that the trial court unduly restricted the cross-examination by defense counsel of two witnesses at the trial. Defendant Richmond maintains that his defense attorney was not permitted to introduce impeaching evidence in regards to the testimony of the complainant, Robert Treskow and defendant Boyd contends that his defense attorney was not allowed to impeach Officer Lonnie Sides. At trial, during the cross-examination of Treskow, Mr. Kunkle, defense counsel for Richmond, questioned Treskow as to how long he had an opportunity to observe Richmond at the time of the robbery. Treskow responded in effect that he did not know. Mr. Kunkle then asked the following questions and Treskow gave these responses:

"Q. Was it less than an hour?

A. Was it less than an hour?

Q. Yes.

A. Yes.

Q. Was it less than a half hour?

A. Yes.

Q. Was it less than a minute?

A. That I don't know."

Kunkle then referred to the transcript of the testimony that Treskow gave at the preliminary hearing in this case. He asked Treskow if he was asked this question and did he give this answer:

"Q. Okay, about a second or two you had a chance to see them?

A. Approximately, right."

The State's attorney objected and the trial court asked, "What was the purpose of asking that question." Mr. Kunkle responded in effect that the testimony was offered for the purposes of impeachment. The trial court· stated:

"Counsel, one side or the other side here he said the exact same thing to both sides, that is not impeaching; and the motion of the state will be granted, the jury is completely to disregard everything that the defense attorney has just read from that transcript."

Defendant Richmond contends the trial court erred in not allowing Mr. Kunkle to impeach Mr. Treskow and in stating in the presence of the jury that the evidence was not impeaching. We do not agree.

■■■ It is well established that a witness may be cross-examined as to prior inconsistent statements. However, the inconsistency must be substantial and relate to a material and not a collateral or irrelevant matter. (*People v. Dascola*, 322 Ill. 473, 153 N.E. 710 (1926).) The test whether a prior statement is sufficiently inconsistent to be utilized for impeachment purposes was succinctly stated in *People v. Rainford*, 58 Ill.App.2d 312, 320 to 321, 208 N.E.2d 314, 318-319 (1965).

"Generally, a prior statement of a witness, in order to be capable of being proved for purposes of impeachment, must be materially inconsistent with his testimony. The test to be applied in determining inconsistency has been variously stated but basically is that the inconsistent statement must have a reasonable tendency to discredit the direct testimony on a material matter. McCormick on Evidence, c 5, § 34, p 64 (1954); CJS vol 98, Witnesses, § 583, p 559."

It has also been stated that "* * * a witness [is not] to be discredited by a variance in slight particulars between his testimony and his previous statements where there is no material inconsistency or contradiction."

(98 C.J.S. *Witnesses* § 583 (1957).) We are of the opinion that the variance between Treskow's testimony at trial and at the preliminary hearing was not material and therefore, the trial court did not err in striking the evidence Mr. Kunkle sought to introduce and instructing the jury to disregard it.

It is also significant to note that the very same evidence which Kunkle sought to introduce had already been introduced by Assistant Public Defender Bloom when he cross-examined Treskow. Bloom had asked Treskow if he had observed his assailants for less than 5 minutes and Treskow responded affirmatively. Bloom then asked Treskow, "Was it less than a minute?" and Treskow replied, "I don't know." Assistant Public Defender Bloom then referred to the same part of Treskow's preliminary hearing testimony that Mr. Kunkle had attempted to introduce and Treskow admitted being asked that question and giving that answer. The State did not object. Therefore, even if this preliminary hearing testimony was impeaching of Treskow's trial testimony, we are of the opinion that it was not error to prevent this repetition of questions that had already been answered. (*Walther v. Chicago & Alton R.R. Co.*, 188 Ill.App. 221 (1914).) "It is the rule that the exclusion of evidence, designed to impeach a witness or affect his credibility, will constitute reversible error where the effect has been prejudicial. (*People v. Whitehead*, 35 Ill.2d 501; *People v. Malston*, 122 Ill.App.2d 466.)" (*People v. Jackson*, 2 Ill.App.3d 297, 302, 275 N.E.2d 737, 741 (1971).) We cannot perceive how the exclusion of the evidence sought to be introduced by Kunkle prejudiced the defendant Richmond when the identical evidence had been fully and adequately brought to the attention of the jury during the cross-examination conducted by Assistant Public Defender Bloom. Kunkle's questioning was redundant and even if the evidence was impeaching the trial court correctly exercised its discretion in controlling cross-examination by prohibiting repetitious examination by defense counsel.

■■ We do not look with favor upon the trial court's comment in the presence of the jury that the evidence was not impeaching. This comment was made in response to the State's objection and gave the rationale for the trial court's sustaining the objection. As previously pointed out, we find no material inconsistency in Treskow's trial and preliminary hearing testimony and the trial court's explanation of its ruling was not so harmful as to constitute prejudicial error. See *People v. Morgan*, 28 Ill.2d 55, 190 N.E.2d 755 (1963).

■■ Defendant Boyd maintains that the trial court erred in not allowing his defense counsel to impeach Officer Lonnie Sides. Officer Sides

was called as a witness on behalf of defendant Richmond. Assistant Public Defendant Kunkle asked Officer Sides on direct examination the following question and he gave the following answer:

"Q. So you didn't see or did you see Mr. Treskow in the same room with these two gentlemen at any time on that evening?

A. No, sir, I didn't."

At the conclusion of Kunkle's direct examination Boyd's defense counsel, Mr. Bloom, began to cross-examine Sides. Mr. Bloom attempted to refer to the preliminary hearing testimony of Officer Sides but the State interposed an objection and a conference was had in the trial court's chambers. The trial court stated that Bloom by calling Officer Sides as a witness at the motion to suppress had vouched for his credibility and that to now allow Bloom to cross-examine Sides would be ridiculous. Mr. Bloom then made an offer of proof by referring to Officer Sides' preliminary hearing testimony in which he stated that while he was interviewing Treskow at the police station Treskow observed two people in the same room and identified them as his assailants. Mr. Bloom maintained that this was impeaching of Officer Sides' trial testimony that he did not see Treskow in the same room with the defendants at any time on the evening in question. The trial court ruled that this was not impeaching and that Bloom could not impeach Sides because he had vouched for his credibility at the motion to suppress.

■■ While we agree with defendant Boyd that the trial court erred in not permitting defense counsel Bloom to impeach Officer Sides, we are of the opinion that Boyd was not prejudiced thereby since Mr. Bloom was able albeit indirectly through subsequent questioning of Officer Sides to draw the jury's attention to the inconsistency between Sides' preliminary hearing and trial testimony. Officer Sides was not called as a witness on behalf of defendant Boyd and Assistant Public Defender Bloom had not vouched for Sides' credibility at trial. The case of *People v. Van Dyke*, 414 Ill. 251, 111 N.E.2d 165 (1953), is analogous to the instant situation. In that case Earl Keller and Jesse Van Dyke were arrested and charged with burglary and larceny. At the trial of Van Dyke, Keller was called as a witness by the State and admitted knowing Van Dyke but denied being with him at the time of the crime. Van Dyke also called Keller as a witness and he testified again that he did not see Van Dyke on the day of the crime. The State was permitted on cross-examination to question Keller as to a prior inconsistent statement he gave the assistant State's attorney. Our supreme court upheld this use of a prior inconsistent statement as proper for impeachment purposes and held that to preclude proof of a prior declaration inconsistent with that stated in testimony would not be an aid to the promotion of justice. The

State in *Van Dyke* was therefore allowed to impeach a witness called by the defense who had previously been called by the State. Similarly, in the case at bar, Assistant Public Defender Bloom should have been permitted to introduce the impeaching evidence in regards to Officer Sides' testimony. However, as previously stated the exclusion of evidence sought to be admitted for impeachment purposes is reversible error only where the effect has been prejudicial. (*People v. Jackson, supra.*) We are of the opinion that despite the erroneous ruling of the trial court defendant Boyd was not prejudiced.

At the conclusion of the conference in chambers, defense counsel Bloom resumed his questioning of Officer Sides. Although he was not permitted to directly refer to Officer Sides' preliminary hearing testimony, Bloom asked a series of questions through which he was able to elicit from Sides and draw the jury's attention to the fact that Mr. Treskow had identified the defendants as his assailants in Officer Sides' presence. We are, therefore, of the opinion that through a circuitous method the impeachment of Officer Sides was accomplished and that defendant Boyd was therefore not prejudiced by the trial court's ruling.

■■■■ The next issue raised by the defendants is that the State failed to prove them guilty beyond a reasonable doubt. We do not agree. The complainant, Robert Treskow, identified the defendants as his assailants and did so unhesitantly and immediately upon entering the review room. While we have held that the confrontation procedure was unnecessarily suggestive, there existed a sufficient independent basis for the in-court identification. Treskow's identification of the defendants was not doubtful, vague, or uncertain. In addition there was the testimony of Officers Hilden and Freeburg that as the defendants approached the police car defendant Boyd dropped a packet of identification cards which bore Treskow's name. Our supreme court stated in *People v. Bennett*, 3 Ill.2d 357, 363, 121 N.E.2d 595, 598-599 (1954):

> "This court has often announced the rule that the possession of stolen property, the proceeds of a burglary or larceny, soon after the commission of the offense, is evidence of the guilt of the person or persons in whose possession it is found and is sufficient to warrant a conviction unless such possession is explained or unless there appears from all the evidence a reasonable doubt of the defendant's guilt. (*People v. Kasallis*, 385 Ill. 158; *People v. Sampson*, 337 Ill. 643.)"

The possession of the stolen packet of identification cards was strong corroborating evidence and the possession was not explained at trial. We have thoroughly reviewed the record in this case and are of the opinion

that the evidence is sufficient to prove the defendants guilty beyond a reasonable doubt.

■■ The final issue raised in this case is by defendant Boyd who maintains that his sentence of 3 to 6 years for robbery must be modified pursuant to the provisions of our Unified Code of Corrections. (Ill. Rev. Stat. 1973, ch. 38, par. 1001—1—1 *et seq.*) The offense of robbery is a Class 2 felony. (Ill. Rev. Stat. 1973, ch. 38, par. 18—1(b).) Under the Unified Code of Corrections the maximum term for a Class 2 felony is any term in excess of 1 year but not exceeding 20 years. (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1(b)(3).) The minimum term for a Class 2 felony is 1 year unless the court having regard to the nature and circumstances of the offense and the history and the character of the defendant sets a higher minimum term. However, if the court imposes a higher minimum term it cannot be greater than one-third of the maximum term set by the court. (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1(c)(3).) Accordingly, defendant Boyd's minimum term of 3 years must be reduced to 2 years. With the exception of reducing defendant Boyd's sentence, the judgment of the Circuit Court of Cook County is affirmed.

Judgment affirmed and sentence modified.

BURMAN and JOHNSON, JJ., concur.